## W. H. POLLARD v. THE STATE.

### No. 2506. Decided April 29, 1903.

**1.—Bill of Exceptions—Agreement as to Filing.**

An agreement by the attorneys for the State and defendant, that defendant's bills of exception were to have been filed as in term time, and that the failure to so file was due to an oversight of the clerk, and that it was understood that they should have been filed before the court adjourned, will not relieve defendant's counsel of apparent laches in the matter, or cure the failure to file the bills in term time. Hence they can not be considered.

**2.—New Trial—Practice.**

The court was authorized to overrule a motion for new trial and in arrest of judgment, when informed that they related merely to the giving and

refusing charges; and it was not necessary to have said motions read to the court.

**3.—Murder—Manslaughter—Charge.**

On a trial for murder, where it appeared that deceased had, on the day before, beaten defendant's father; that he was a dangerous man and had threatened to kill defendant and his brother; that they came suddenly upon deceased and asked him for an explanation as to his treatment of defendant's father, which he refused to give, but advanced upon them and made a demonstration as if to draw a pistol, whereupon defendant and his brother fired upon and killed him; Held, the issue of manslaughter was not raised, and the court did not err in failing to submit that issue to the jury.

**4.—Murder in Second Degree—Manslaughter—Adequate Cause—Charge.**

On a trial for murder, where the court, in submitting murder in the second degree, did not require the homicide to be committed upon malice at all, but instructed to find murder in the second degree, if defendant killed deceased in a sudden transport of passion, without adequate cause, and not in self-defense; Held, the charge was insufficient in not defining adequate cause as it appertains to manslaughter.

**5.—Same—Provoking Difficulty.**

Provoking a difficulty is not involved as an issue, and the court should not charge upon it where the questions were, whether defendant made the first demonstration and was in the attitude of attacking deceased, nor on the other hand, whether deceased first attacked defendant, and defendant only acted in his self-defense.

Appeal from the District Court of Montgomery. Tried below before Hon. L. B. Hightower.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Spencer Davis, on the 19th day of February, 1901, by shooting him with a gun.

The facts attendant upon the homicide are summarized in the opinion.

*Sam A. Crawford* and *John C. Williams,* for appellant.—Where the court's definition of murder in the second degree makes the jury's finding of this offense depend upon the offense being committed "in a sudden transport of passion,, aroused without adequate cause," then a charge on manslaughter should be given, explaining to the jury what is meant by "sudden passion," and what would in law be considered as "adequate cause" to arouse the same, otherwise said definition of murder in the second degree is incomplete. Whittaker v. State, 12 Texas Crim. App., 443; Burnett v. State, 12 Texas Crim. App., 534.

The court erred in failing to give the jury in charge the law on manslaughter, in that in its charge on murder in the second degree the court virtually instructed the jury that there was evidence that defendant killed deceased while in a sudden transport of passion, and the court should have defined the term "sudden transport of passion" and should have told the jury how they were to determine whether the same was aroused by adequate cause, or was without adequate cause, and said charge was warranted by the testimony and was fundamental.

The court erred in that portion of its charge wherein it charged the jury as follows: "But in this connection you are further charged, that

if you find from the evidence that the defendant, or the defendant and Washington Pollard, acting together, sought the meeting with the deceased, Spencer Davis, and did so with the purpose and with the intention of provoking a difficulty with said deceased, and did provoke the difficulty with the deceased for the purpose and with the intention of getting an opportunity to kill deceased, then the defendant can not justify on the grounds of self-defense, even though the defendant may, after the difficulty began, have found it necessary to kill deceased in order to save his own life or that of Washington Pollard," because said charge was unauthorized by the testimony, and was upon the weight of the evidence, and was an uncalled for and unwarranted abridgment of defendant's right to self-defense.

The defendant, the only witness on the stand who testified to the transaction, testified to facts which make the killing a clear case of self-defense. That he started to defendant's house to settle peaceably the trouble between deceased and defendant's family; that he met deceased in the road; spoke to him in the usual way; deceased refused to speak, but kept riding towards him. He then asked deceased why he had treated his father like he did the day before; deceased did not reply, but began to draw his gun; defendant drew his and fired; defendant's brother fired about the same time; defendant missed, but his brother killed deceased. There is no evidence of provoking a difficulty here. The State's theory is that defendant and his brother sought deceased for the purpose of killing him, and they furnish no evidence that they, or either of them, did anything calculated to or intended to provoke a difficulty. Johnson v. State, 4 Texas Ct. Rep., 337; Williams v. State, 5 Texas Ct. Rep., 440.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years.

The evidence, in effect, shows that deceased, Spencer Davis, and Littleton Pollard, the father of appellant, had a difficulty on Monday, February 18, 1901, in which Littleton was worsted. Appellant and his brother, Washington Pollard, were at Willis, several miles distant, but, having heard of the transaction that evening, they came on horseback to their father's house and remained there a short time, and went a short distance to their grandfather's, Isaac Pollard's, and stayed all night. Early the next morning appellant and his brother, Washington, both armed, went to where deceased was working in his field, and, as he approached where they were, leading two horses, the difficulty occurred. As far as the State's testimony was concerned, there was no eyewitness to the homicide. The State evidently relied upon the fact that appellant and his brother entertained a grudge against deceased because he had beaten and severely injured their father on the

day before, and the further fact that they armed themselves on that Tuesday morning and went rapidly to the field of deceased, and, as soon as they reached the point where deceased was subsequently found, the shooting occurred. The parties then rapidly left the scene. Appellant himself testified that when he heard deceased had beaten his father he came to see about it, and, after staying all night at his grandfather's, he determined to go and see deceased in regard to it; that he went on foot, and did not expect his brother, Washington, to go with him; that he carried a pistol because he knew deceased was a dangerous man; that his brother, Washington, followed, and caught up with him, and he was armed with a shotgun. When his brother came up, he said, "I thought I told you to stay at home." However, they went together to the place of the homicide, and when they got down near the branch in the field where deceased farmed, they met deceased, who was riding one horse and leading another. Appellant said to him, "Hello, Spence, I want to talk to you about what you did to father." Deceased did not speak, but kept approaching, and attempted to draw his pistol with his left hand; that he and his brother both fired at deceased about the same time; that he missed deceased, but his brother killed him. When deceased's body was found, his pistol was on the ground near his left hand. This is substantially the testimony adduced.

Appellant contends the court committed an error in overruling his motion for continuance. However, the bill of exceptions taken by appellant to the overruling of said motion was filed on February 5th, whereas the term of the court adjourned on January 28th. To cure this failure to file the bill in term time appellant has presented to this court an agreement entered into between the district attorney, representing the State, and counsel representing appellant, to the effect that certain bills of exception could be filed after term, and considered as filed during the term. The recitation on this point in the agreement is as follows: "It is agreed that the bills of exception in this cause were to have been filed as in term time, and they show that the reason why said bills of exceptions were not filed and dated in term time was due to an oversight of the clerk of the court, and the district attorney here shows that he urged no objection, and agreed to the filing of the bills of exception at the time they were filed, and knows that it was understood that they should have been filed before the court adjourned." The wording of this agreement is peculiar, but we do not understand it to exonerate appellant's attorney for failing to file the bills during the term. We can not consider the question as coming within that line of decisions which would authorize the bill to be considered though not filed during the term, on the ground that there was no laches on part of appellant or his counsel, and that the neglect to file the same was solely due to the clerk or some other officer. Stanford v. State, 42 Texas Crim. Rep., 343. This case comes rather within the rule laid down in the decisions of Riojas v. State, 36 Texas Crim. Rep., 182; Nichols v. State, 37 Texas Crim. Rep., 616. Accordingly, the action

of the court overruling the motion for continuance can not be considered.

What we have said as to this bill of exceptions disposes of appellant's first, second, and fourth bills, which are to the action of the court with reference to the admission of certain testimony. As explained by the court, there is nothing in appellant's bill of exceptions number 3. The court was authorized to overrule the motion for new trial and in arrest of judgment, when informed that the same was merely to the action of the court giving and refusing charges, and it was not necessary to have the same read.

In appellant's motion for new trial he questions the action of the court in regard to giving certain charges. Among other things, appellant strongly insists that the court should have given a charge on manslaughter predicated on the fact that deceased on the day before assaulted the father of appellant, and severely beat him; and the further fact that appellant knew deceased was a dangerous man, and had previously threatened his and his brother's life, and that at the time of the homicide he came suddenly and unexpectedly upon deceased on a lonely road; that when he accosted deceased he refused to speak to them; and that he then asked deceased for an explanation of his assault upon their father, and he refused to give any explanation, but advanced upon them, and made a demonstration as if to draw a pistol. This is a substantial summary of the facts on which appellant contends that the court should have given a charge on manslaughter. We have examined the record carefully, and, in our opinion, the facts do not show manslaughter. The fact that deceased refused to speak to appellant when accosted, and that he refused to give any explanation as to why he had assaulted defendant's father on the day before, would not constitute provocation, under our statute, sufficient to reduce the offense to manslaughter. If it is true, according to appellant's testimony, that deceased advanced upon him in a threatening attitude, and made a demonstration as if to draw a pistol, this gave appellant the full right of self-defense; and he had the benefit of this in the court's charge. But, in our opinion, it did not raise the issue of manslaughter, and the court did not err in refusing and failing to submit this issue to the jury.

In this connection appellant insists that under the peculiar phraseology of the court's charge on murder in the second degree it became necessary for the court to have defined manslaughter. The court's charge in this respect is as follows: "If you believe from the evidence beyond a reasonable doubt that defendant, with a gun, or instrument reasonably calculated and likely to produce death, * * * in a sudden transport of passion, aroused without adequate cause, and not in defense of himself or Washington Pollard against an unlawful attack, * * * shot and killed deceased, to find him guilty of murder in the second degree;" the contention being that, the court having stated that the transport of passion must be without adequate cause, it became necessary for the court to state what would constitute adequate cause,

so that the jury might know that the sudden passion was engendered without adequate cause. It would seem, from the authorities cited by appellant, that this contention is sound. Whittaker v. State, 12 Texas Crim. App., 443; Brunet v. State, Id., 534; Neyland v. State, 13 Texas Crim. App., 547. In the latter case Judge White, speaking for the court, said: "It is only necessary for the court to charge on manslaughter when that phase of the case is raised from the evidence; and it is not necessary, where there is no manslaughter, but only murder, for the court to define manslaughter." In speaking of the two cases above cited, which were invoked, he further says: "In both of those cases the charge given, in effect, made implied malice, or murder of the second degree, actually depend upon the absence of facts and circumstances sufficient to reduce the offense to manslaughter or negligent homicide, or which would excuse or justify the killing. This, as we have seen, is not a proper charge to be given where a lower grade is not involved. If it be given, however, when not demanded, we do not see how the jury is to understand and comprehend it unless the lower grades mentioned are explained, with the law governing them." In accordance with the above cases, we hold that, inasmuch as the court, in its charge on murder in the second degree, made it depend on a transport of passion aroused without adequate cause, then it became necessary for the court to further define adequate cause. The court might have submitted a charge on murder in the second degree without involving the question of manslaughter, but this was not done here. Indeed, the court, in submitting the question of murder in the second degree, did not require the homicide to be committed upon malice at all, but authorized the jury, if they believed appellant killed deceased in a sudden transport of passion, without adequate cause, and not in self-defense or in defense of his brother, to find him guilty of murder in the second degree. Of course, in order that a homicide be murder in the second degree, it must be upon malice; and, if the court had properly defined implied malice, without involving it with the question of adequate cause, he might then have submitted the issue of murder in the second degree without a definition of adequate cause, as it appertains to manslaughter.

Appellant also assigns as error the action of the court charging on provoking the difficulty. He maintains that there is nothing in the statement of facts authorizing a charge on this subject. We have repeatedly held that a charge on provocation should only be given where the testimony raises this issue. The testimony on this point, it occurs to us, simply involves the question as to who made the first attack, and does not raise the issue of provoking the difficulty. If, when appellant met deceased, he made the first demonstration, and was in the attitude of attacking deceased, then he would be guilty. If, on the other hand, when the parties met, deceased first attacked appellant, and appellant only acted in his self-defense, then he would not be guilty. As stated, we do not believe that the court was authorized to give a charge on pro-

vocation. McCandless v. State, 42 Texas Crim. Rep., 58; Casner v. State, 43 Texas Crim. Rep., 12.

We have examined the other portions of the court's charge which are criticised, and would suggest that on another trial, if the facts should be the same, the court should instruct on the doctrine of principals, and how far appellant would be bound by the acts and conduct of his brother, Washington. Besides, there are some clerical errors in the charge which should be corrected.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*