Andrae Abbata and Michael Angelo Castigalia v. The State.

No. 3577. Decided May 22, 1907.

**1.—Murder in Second Degree—Charge of Court—Manslaughter—Defense of Another.**

Upon trial for murder, where the evidence showed that the deceased got into an altercation with one of the defendants, according to the evidence of the defense, and drew a pistol upon him, and the other defendant shot the deceased, and the State's testimony suggested murder with robbery as the motive, the court correctly charged murder in the first degree and defense of another, and there was no error in failing to charge on manslaughter.

**2.—Same—Charge of Court—Murder in Second Degree—Implied Malice.**

Upon trial for murder where the issue of murder in the second degree was involved, the court, although he had defined implied malice, should have directly applied this principle of law to the facts, and an omission to do so was error.

**3.—Same—Charge of Court—Principal—Combination of Cases.**

Where two defendants were upon trial for murder, the court in his charge erred in so combining the cases of both as that the guilt of one was made absolutely dependent upon that of the other; and in failing to apply the law of principals to the facts in the case, the evidence showing that both defendants were not necessarily guilty and might have been actuated by different intents, and their guilt measured by different standards.

Appeal from the District Court of Deaf Smith. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellants were convicted·of murder in the second degree, and the punishment of each assessed at fifteen years in the penitentiary.

The State's case is wholly circumstantial. The evidence tends to show that appellants, Italian laborers, had been for some time working on the railroad in the vicinity of Texico. The deceased was also an Italian, who, at the time, had just come into the State seeking employment on the railroad. A day or two before the homicide it appears that appellants, who had been working on the railroad near Bovina, went to Amarillo, and on the 30th of January, 1907, they returned from Amarillo on the road, and deceased Viontonio Spinose was on the same

train.  At Frio, some twelve or fifteen miles from Bovina, all three of the parties got off the train and were seen going up the track in the direction of Bovina.  The next morning appellants· were discovered going across the country some nine or ten miles, and inquiring for work at ranch houses, deceased not being with them.  On that day it was ascertained that deceased had been killed and his body found some two miles from Frio in the direction of Bovina; he had been shot two or three times, two of the wounds being fatal, one entering near his spinal-column in the back, and the other cutting an artery in his left arm. His watch and chain were found on his person, and $4.25 in his pocket, also a razor. · There was sewed up in his clothes something over two hundred dollars in currency.  The killing under the circumstances would suggest that the motive was robbery, and the fact that he was found with such a small amount of property may have been the reason why it was not taken, the currency being concealed.  The finding of the body of deceased, and the knowledge that he was last seen with appellants, and their leaving the railroad and traveling across the country, evidently lead to their arrest.  This was in effect the State's case.

Appellants both took the stand and testified substantially that they had quit work in the neighborhood of Bovina a day or two before the homicide, and had gone to Amarillo to collect a small debt due one of them; that they returned from Amarillo on the 30th of January, 1907; that the train was delayed a short time at Frio; that they got off the train and were accosted by deceased, who was a stranger to them; he told them that he was an Italian, and was looking for work, and also told them that the gang of railroad employees that appellants had been working with had moved their camp from the neighborhood of Bovina, and were some two or three miles from Frio; that he had a letter to that effect, and was going there; that on this information appellants abandoned the train, and they and deceased walked along the track toward Bovina where deceased said the gang had moved to; that when they had proceeded some two or three miles beyond Frio, sometime in the evening, they stopped, appellant Castigalia stepping to one side to relieve a call of nature; in the meantime his companion, Andrae Abbata and deceased got into an altercation; deceased asked Abbata to take a drink with him, and pulled out a bottle of whisky, and Abbata had one also and asked deceased to take a drink with him.  Deceased filled his mouth with whisky and blew it in the face of Abbata, thereupon Abbata did the same thing.  In a short time deceased drew a pistol and started at Abbata, snapping it at him, and endeavored to shoot him, and Castigalia then jumped up and drew his pistol and pursued deceased, who was at the time pursuing his companion Abbata, and shot him (deceased) to keep him from shooting Abbata.  They then became frightened and left the railroad and took across the country.  This is a substantial statement of the case.

We do not believe the court erred in giving a charge on murder in the first degree, nor in failing to give a charge on manslaughter.  The

charge given by the court with reference to the defense of another was called for by the evidence, and was a proper charge responsive thereto.

Appellant objected to the charge of the court on murder in the second degree, which is as follows: "If you believe from the evidence beyond a reasonable doubt, that the defendants, in the County of Parmer, and State of Texas, on or about the 30th day of January, 1907, as alleged, with a deadly weapon, did shoot and thereby kill Viontonio Spinose as charged in the indictment, you will find them guilty of murder in the second degree, and assess their punishment at confinement in the State penitentiary for any period that the jury may determine and state in their verdict, provided it be not less than five years." The objection to this charge is that it does not instruct the jury that the homicide must have been committed on implied malice, and does not even tell the jury that it must have been unlawful, but is a peremptory instruction to the jury that if they find appellants killed deceased with a deadly weapon as charged in the indictment to find them guilty of murder in the second degree. It is claimed that this charge would equally embrace a killing in self-defense. While it is true the court defined implied malice in preceding charges, Nos. 13 and 14, we cannot determine that the ordinary juror would bring these charges forward and interpolate said definitions into paragraph 17 of the charge that the killing was on implied malice. We cannot speculate as to matters of this character, or insert certain essential features which should have been directly embraced in the charge applying the law to the facts. The court should have distinctly told the jury that they must believe that the killing was unlawful, and done upon implied malice as before defined before they could convict them of murder in the second degree.

Appellants further insist that paragraph No. 18 of the court's charge is defective in this: "If from the evidence you are satisfied, beyond a reasonable doubt, that the defendants or either of them is guilty of murder, but have a reasonable doubt whether it was committed upon express or implied malice, then you must give the defendants the benefit of such doubt, and not find him or them guilty of a higher grade than murder in the second degree." The contention here is that the court combined the cases of both appellants in such measure as that the guilt of one was made absolutely dependent upon that of the other. We believe the charge is subject to this criticism. The charge is further criticised because there is no application of the law of principals to the facts of this case, but the cases of both appellants are so interlocked and interwoven in the charge as to make the guilt of one the guilt of the other. We believe that the charge contains this vice. True, section 23 contains a definition of who are principals, but then there is no application of this definition to the facts of this case, and the facts do not show, in our opinion, that if one is guilty of the charge, both are necessarily guilty. It is a principle of the common law that the guilt of every defendant stands upon

his own intent as demonstrated by his acts. To state the proposition in common parlance, before the criminal law, "every tub must stand on its own bottom," and although two or more persons may engage in the same criminal offense, they may be actuated by different intents, and their guilt measured by different standards. See Red v. State, 39 Texas Crim. Rep., 677. According to the testimony, unless there was some conspiracy or previous design to kill and rob the deceased, on the part of both appellants, then there can be no theory arising from the testimony, which would make Abbata guilty of felonious homicide. According to both his testimony and that of Castigalia he did nothing towards aiding the latter in the homicide. Both testified that Castigalia killed the deceased; that deceased was pursuing Abbata with a pistol, and that Castigalia shot deceased in the back while he was pursuing his companion. Of course, the court gave this theory of self-defense in a charge in favor of both appellants, and instructed the jury if they believed that theory to acquit, yet the court should have pertinently instructed the jury on the law of principals, and have told them if they believed that Castigalia committed the homicide, and that he did so of his express or implied malice, as the case may be, and they further believed that Abbata knowing the unlawful intent of Castigalia aided him by acts, or encouraged him by words and gestures or both, as the case may be, then to find him guilty; if on the contrary they believed that Castigalia slew deceased of his express or implied malice, as the case might be, but that Abbata did not know his intent, and did not with such knowledge aid him by acts or encourage him by words and gestures in said offense, to acquit him, or if they entertained a reasonable doubt on this subject to acquit him. It may be that the testimony of the appellants may not be true, but the jury have a right to determine this, and the court should afford them a proper measure for such consideration. We would not be understood as passing on the guilt or innocence of these appellants. This is a peculiar case: in accordance with the State's theory the jury might believe appellants guilty, while according to the defendant's theory they are innocent. Both of these theories should be presented in appropriate instructions.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*