### George McMillan v. The State.

#### No. 368. Decided March 23, 1910.

**1.—Murder—Charge of Court—Murder in the Second Degree—Too Restrictive.**

Where, upon trial for murder, the court in his charge on murder in the second degree eliminated from the jury every issue of manslaughter and self-defense arising upon the facts, and left no other alternative than a verdict of murder in the second degree, unless the jury found that the weapon used was not a deadly weapon, the same was reversible error. Following Clark v. State, 51 Texas Crim. Rep., 519, and other cases.

**2.—Same—Charge of Court—Self-Defense—Provoking Difficulty—Limiting Self-Defense.**

Where, upon trial for murder, the evidence perhaps justified a charge of the court on provoking the difficulty, but the defendant's testimony showed that the provocation came from the deceased, it was reversible error in the court's charge on self-defense to qualify the same by a charge on provoking the difficulty; besides the charge was argumentative. Following Drake v. State, 46 Texas Crim. Rep., 448, and other cases.

**3.—Same—Charge of Court—Improper Treatment—Gross Neglect.**

Where, upon trial for murder, there was evidence that the cause of the death of the deceased resulted from gross neglect and improper treatment after the wound was inflicted, and the court's charge on this phase of the case did not present fully the matter involved, but the special requested instructions did, the latter should have been given.

Appeal from the District Court of Baylor. Tried below before the Hon. Jo A. P. Dickson.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & Oliver,* for appellant.—Upon question of court's charge on murder in the second degree: Cases cited in opinion.

On question of court's charge on self-defense: McCandless v. State, 57 S. W. Rep., 672, and cases cited in opinion.

On question of the court's charge of the defendant's right of self-defense: Carter v. State, 37 Texas Crim. Rep., 403, 35 S. W. Rep., 378; Woodward v. State, 50 Texas Crim. Rep., 294, 97 S. W. Rep., 499; Young v. State, 53 Texas Crim. Rep., 416, 110 S. W. Rep., 445; Gray v. State, 55 Texas Crim. Rep., 90, 114 S. W. Rep., 635.

On question of the court's charge on maltreatment: Johnson v. State, 43 Texas Crim. Rep., 283, 65 S. W. Rep., 92; Sartin v. State,

51 Texas Crim. Rep., 571, 103 S. W. Rep., 875; Franklin v. State, 51 S. W. Rep., 951; Ware v. State, 55 S. W. Rep., 342.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for murder in the second degree, the punishment being assessed at ten years confinement in the penitentiary.

The tragedy occurred in the reception room or office of a hotel in Knox City, Baylor County, on the night of the day on which the election was held, resulting in the election of what is known as the Bailey ticket over the Johnson ticket, for the selection of delegates to the National Democratic Convention. There was some excitement generated by reason of the election, and the matter was sufficiently exciting to cause some caustic remarks pro and con by the adherents of the opposing tickets. Just preceding the difficulty appellant and a Mr. Alexander had had a discussion over the election in regard to returns as indicated in the Fort Worth Record and Dallas News. This passed, after a few moments of wordy altercation, and the two gentlemen engaged themselves in reading newspapers, and, so far as they are concerned, it ended any altercation. While appellant was engaged in reading the paper, deceased entered the room and made a remark to the effect that, "We have Mr. Bailey for our Senator for some length of time." This caused appellant to look up, and deceased looking at appellant whistled in a way that was irritating to appellant. Appellant approached deceased and blew in his face and shook the paper he held in his hand in the face of deceased, whereupon deceased got up, went a few feet, secured an iron poker, returned and resumed his seat. This occurred after deceased suggested to appellant that he must not repeat what he had done. The evidence is rather confusing at this point as shown by the State witnesses, but it seems when deceased returned with the poker and resumed his seat, and after making the remark above indicated, appellant said to him, "Whistle again," which deceased did, and appellant again blew in his face, and moved the paper in a swaying manner in front of the face of deceased, and some of the witnesses say they think he struck deceased in the face with the paper, whereupon deceased jumped up and struck appellant three or four licks on the head with a poker, cutting as many gashes, which caused the blood to flow very freely. Appellant was fighting with his fists. At this point the State's evidence shows the parties were separated. Appellant stepped back a few feet, got out his knife, wiped the blood out of his face, and approached deceased, and cut him several times. Deceased lived about a week and died. This is practically the substance of the State's case. It might be stated the testimony, among the State's witnesses, is not very harmonious, resulting perhaps largely from the fact that they saw it under different aspects, and all did not see it alike, but as best the facts may be gath-

ered the above is a substantial statement of the State's side of the case. Appellant's side of the case may be stated from his own testimony, as he placed it before the jury. He says after he had finished the conversation with Mr. Alexander he went over to the clerk's desk to look over his paper; that he had his back to the desk in a westerly direction; that a little distance from the desk parties were talking in the room, to which he was not paying much attention; that deceased said something that caused him to look at deceased. Appellant said he did not catch the words, nor understand what he said, and stepped in his direction, and deceased was looking fiercely at him; that he did not know any reason why he should be looking at him that way, and while he, appellant, was looking at him, deceased got up and got a poker, sat down and commenced whistling or blowing. He says he then looked at him a moment, having his paper in his hand, and then mocked deceased, and commenced slapping himself, keeping time on his thigh with the paper, and while doing this deceased got up and hit him. Appellant says he imitated deceased in his whistling as near as he could. He further says he supposed that while he was whistling and patting himself with the paper, keeping time with the tune, that he was three feet in front of deceased, and while in that attitude deceased struck him with the poker; that when deceased struck him he struck back with his fist. He says: "I don't know whether I intended to offend young West (deceased) or not. I just answered him in that way. I think I was smiling at his expression just before he struck me. I heard some of the crowd laugh just before he struck me. I did not think West was going to hit me with the poker, nor did I intend to provoke a difficulty when I did it." He then describes the licks and cuts on his head caused by the blows inflicted by the poker. He says from one of the licks he felt like he was going to faint, and began to smother, and was distressed. At this juncture he jerked out his knife and went to fighting deceased. That blood was running over his face and his eyes, and someone shoved him back, and it was about that time he got his knife. He said he did not know who was there when the blood was in his eyes. He says there was no one between them from the time they began until the difficulty was over. This perhaps is sufficient to show appellant's view of the case. Both sides went minutely into the details of what occurred, but we think this is a sufficient statement in regard to the trouble to bring in review the questions involved in the charge in reference to that phase of the case. There was evidence also in regard to the wounds and their effect upon deceased as well as the treatment by the physicians, and whether it was through improper treatment and neglect of the wounds that caused the death or not. The attending physicians testified they gave the wounds proper treatment, and that on the 5th day peritonitis set it, from which he died on the 7th day. Other physicians testified for appellant that the treatment of the wound by the physicians was unskillful and produced peritonitis, and the

peritonitis was not the result of the wound, but from the want of proper surgical and medical treatment, and in fact intimate the peritonitis was produced by the treatment of the wounds by the physicians. This, perhaps, is a sufficient statement of the case to bring in review all the questions suggested by appellant in regard to the charges given and refused.

1. In regard to murder in the second degree, the court gave the following charge: "If you believe from the evidence beyond a reasonable doubt that the defendant, in the county of Knox, and State of Texas, as alleged with a deadly weapon, did cut and thereby kill Osca West as charged in the indictment, you will find him guilty of murder in the second degree and assess his punishment," etc. Exception was reserved to this charge, which exception was well taken. This charge was condemned in the recent case of Smith v. State, decided at the present term of the court, wherein Judge Ramsey reviewed the question fully. That case follows Clark v. State, 51 Texas Crim. Rep., 519. See also Abbata v. State, 51 Texas Crim. Rep., 510. The charge here given by the court was condemned in each of the cited cases. It is unnecessary to review the matter further. Those cases thoroughly adjudicate the question involved.

2. The court gave a charge on self-defense, but qualified it by a charge on provoking a difficulty. There are exceptions as well to the charge given as that refused in regard to provoking a difficulty which will suggest themselves to the court upon another trial under the authorities cited below. While under the facts perhaps a charge was admissible in regard to provoking a difficulty, but under the condition of this record there ought to have been given a clear and unqualified charge in regard to self-defense. There are two phases to the matter of provoking a difficulty, conceding that it is in the case. Under the State's theory the court was perhaps justified in giving a charge on provoking a difficulty. Under appellant's testimony the provocation came from the deceased. The court's charge limited self-defense in regard to provoking a difficulty to a purpose on the part of appellant to kill, as well with reference to provoking it for the purpose of engaging in a personal difficulty without an intent to kill, limiting it under the latter phase to a conviction for manslaughter. Appellant's theory and his testimony before the jury was to the effect that he did not provoke the difficulty and had no intention of provoking a difficulty; that deceased provoked it, and began the attack by striking him with a poker. Under this view of it the court's charge should have informed the jury that he had a perfect right of self-defense under those circumstances unincumbered by the State's theory of provoking a difficulty. If the deceased provoked the difficulty, and produced the occasion, then appellant's right of self-defense should not have been limited, and the jury should have been told under those circumstances his right of self-defense was perfect. To the mind of the writer it is very seriously to be questioned whether the doctrine of

provoking a difficulty was in the case, but these remarks are made on the theory that the evidence did justify the charge. So upon another trial the court in charging upon provoking a difficulty, must give appellant the benefit of his side of the case as made by the facts; and, further, it may be said that the charge as given was argumentative and not given in accordance with the authorities. See Drake v. State, 46 Texas Crim. Rep., 448; Sprinkle v. State, 49 Texas Crim. Rep., 224; Vann v. State, 45 Texas Crim. Rep., 434, 77 S. W. Rep., 813; Drake v. State, 46 Texas Crim. Rep., 448, 80 S. W. Rep., 1005; Casner v. State, 57 S. W. Rep., 821; Pollard v. State, 45 Texas Crim. Rep., 121, 73 S. W. Rep., 953; Wilson v. State, 46 Texas Crim. Rep., 523, 81 S. W. Rep., 34. Appellant not only excepted to the charge given, but asked special charges covering the question, which were refused. We have not gone into this matter at length, but refer to it and cite the authorities so that upon another trial the issues of self-defense and provoking a difficulty will be appropriately charged.

3. The court gave the following charge: "The jury are charged that homicide is the destruction of the life of one human being by the act, agency, procurement or culpable omission of another. The destruction of life must be complete by such act or agency. But, although the injury which caused death might not under other circumstances have proved fatal, yet if such injury be the cause of death, without its appearing that there has been any gross neglect or manifest improper treatment by some other person, such as a physician, nurse or other attendant, it would be homicide; and if the jury are satisfied from the evidence that someone cut the deceased, and inflicted upon him a wound which was not in itself necessarily mortal, and that the wound inflicted produced peritonitis, or any other effect which would result in the death of the deceased, the party inflicting the injury would be as guilty as if the wound was one which would of itself inevitably lead to death."

Exception was reserved for various reasons, and the following charge requested: "The jury are charged that homicide is the destruction of the life of one human being by the act, agency, procurement or culpable omission of another. The destruction of life must be complete by such act or agency. But although the injury which caused death might not under other circumstances have proved fatal, yet if such injury be the cause of death without it appearing that there has been any gross neglect or manifest improper treatment from some other person such as a physician, nurse or other attendant it would be homicide. But if the jury are satisfied from the evidence that the defendant cut the deceased and inflicted upon him a wound which was not in itself necessarily mortal and further find from the evidence that the deceased died from peritonitis caused by improper treatment of his attendant physicians, or if you have a reasonable doubt as to whether the peritonitis was caused by the wound inflicted

by the defendant or by the treatment of the wound by physicians in attendance upon him then you will acquit the defendant of the offense of murder."

Without going into a critical examination of these charges, we think the charge of the court is not sufficient, and the charges requested by appellant or a similar charge should have been given. The court's charge did not present fully the ·matter involved. Appellant was entitled to have the jury instructed as requested by him, that if the death of deceased was brought about by improper treatment or gross neglect of the physicians, he would not be guilty of the homicide. The evidence, even as briefly stated in the foregoing portion of the opinion, suggests that it may have been the improper treatment that brought about the peritonitis which resulted fatally. It was an issue before the jury on the facts sharply drawn and strongly presented. The court's charge as far as it went was correct, but fell short of the law under all the facts adduced.

The matters with reference to continuance, and the manner of impaneling the jury, and motion to quash the venire we deem unnecessary to discuss or notice. They may not arise upon another trial.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*