CHARLIE LERMA V. THE STATE.

No. 23462. Delivered February 5, 1947.
Rehearing Denied April 2, 1947.

*Lawrence L. Bruhl,* of Llano, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin for the State.

BEAUCHAMP, Judge.

The appeal is from a penitentiary sentence of five years for murder.

There is no material conflict as to the facts, which show that

appellant and deceased, together with other Mexicans, were drinking in a beer tavern in Llano County on the evening of February 3, 1946. Appellant, for some unexplained reason, became angry at the deceased and told him he was not going home with any "cabron." The deceased walked to the counter, purchased some cheese and crackers, and then asked appellant to not curse him any more. At this appellant stabbed deceased in the abdomen with a knife, and motioned as though to reach for a beer bottle. Other parties took appellant out of the tavern and he told them that he had cut deceased, but was not going to do anything else. The deceased also made the statement at the time, to others, that appellant had cut him. No one else saw the knife and the incidents preceding the stabbing were not sufficient to attract their attention during the revelry in which they were engaged.

Deceased was carried to a hospital in Burnet and there examined by a doctor who found no indications, at the time, that the wound was deep enough to have cut an intestine. It was a stab wound about an inch and a half, or three-quarters, in length as the doctor remembered it. He gave it surface treatment and warned him that if it began to pain him he should return for treatment that night, and in any event he should come back the next morning. Deceased was carried to a farm house and within an hour thereafter was in such pain that another doctor was called from a nearby town. When he arrived, upon seeing the condition of the wound, he advised that the injured party be taken to a hospital. An ambulance was secured and they arrived in Austin sometime before daylight. After questioning him as to his condition the doctor, who was acquainted with the deceased, decided to operate. The patient was prepared for the operation but died suddenly from a blood clot, before the operation was performed. An autopsy revealed that an intestine had been cut and internal bleeding was the cause of the clot.

The defense in the case was that death was caused not by the wound, but because of the negligence of the doctors, or of the deceased, or others, in looking after the wound. Two doctors, the one upon whom he first called at the hospital in Burnet, and the other who began to operate in Austin, testified as to the condition they found and gave the positive testimony, without objection, that he had proper attention at the time, in view of the appearance of the injury. They both agree that, while an operation might have been successful if performed at once, the injury gave no indication of a punctured intestine and until

it did so an operation would not be considered necessary. There was no pain and no bleeding. Later, however, when pain developed the doctor was called, about midnight, and advised an operation at some hospital. If there should be negligence shown by the evidence, it could only be in the manner and time of handling him after he consulted the first doctor and until he was in the hospital in Austin. Whether an issue of negligence was raised or not, the court submitted it to the jury and the question of fact was found against their contention.

Bill of Exception No. 1 complains of the argument by the prosecuting attorney. It is qualified, however, by the court who said that the argument was invited by that of the attorney for the defense.

Bill of Exception No. 4 complains of a question and answer which elicited from Dr. Nanney, of Austin, the expert opinion that it was not gross negligence on the part of the first doctor to fail to recommend a surgical operation at once. Bills of Exception Numbers 7 and 8, by different language, raise exactly the same question. Unless the opinion solved some issue adversely to defendant, the admission of the opinion could not be reversible error. Branch's Ann. P. C., Sec. 131; Coyle v. State, 21 S. W. 765; McCormick v. State, 108 S. W. 669.

It will be observed that in testimony of both doctors whose evidence went to the jury proper attention was given to the wound, under the circumstances, as it came to their attention. This was admitted without objection and there is no evidence to the contrary. Such being true it, of necessity, follows that there was no negligence—much less gross negligence—on the part of the doctors. Such evidence having been introduced without objection the bills would in no event show reversible error. Appellant would be placed in no worse position following such testimony than he was before its admission.

While not considering it necessary to discuss further the law involved, we do deem the question well settled in other jurisdictions, though it does not appear to have been definitely passed on by this court. See 78 A. L. R., page 755, et seq.

Other bills of exception bring forward the evidence complained of in question and answer form. There is no certificate of the trial judge that it is necessary to do so, and they should not be considered. Jones v. State, 154 S. W. (2d) 456; Hyde v. State, 136 S. W. (2d) 850; Mallett v. State, 158 S. W. (2d) 792; Kodak v. State, 165 S. W. (2d) 908; Austin v. State, 187 S. W. (2d) 222; Vernon's Ann. C. C. P. Art. 667, Note 24.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again complains because of the testimony of Dr. A. L. Nanney, contending that the hypothetical question propounded to the doctor did not contain all the facts and circumstances surrounding the treatment of the deceased, beginning at the time the deceased was wounded and continuing until the time of his death. The question objected to came in the testimony of Dr. Nanney after he had related the circumstances told to him as to the wound, its character and the deceased's reaction thereto, as wel as the early trip to the hospital. The doctor answered many questions propounded to him by both sides of this controversy. His testimony, as finally summed up, was as follows:

"So far as the conditions have been presented to me from the hypothetical questions propounded, there has been nothing that would indicate to me that the doctor who performed the first examination committed any gross neglect. I have not seen any signs of any gross neglect presented either by the hypothetical questions or from what I saw of the patient myself. There has been nothing that led me to believe there was any gross negligence on the part of the physician or anyone taking care of him."

We can see no reason to say that these different questions based on hypotheses raised by the evidence should again have been reiterated in the answer just above quoted. The answer made the basis of Bill No. 4 is as follows:

"Q. If surgery wasn't recommended within twenty minutes after the injury occurred, or after the patient was brought to the hospital, and surgery was not recommended, taking into consideration the size of the deceased and his physical body, you wouldn't consider failure to recommend surgery to amount to gross neglect in that case, would you?"

To which question the witness answered, "No, sir, I would not." The main objection to this question is that it did not contain all the facts known to the court to have existed at such time. This witness' testimony was twice used on the trial, and after the facts relative to a preparation for an operation and the deceased's sudden death and a description of the injuries to deceased's body, the doctor was asked many hypothetical ques-

tions by both sides to this controversy, the last one appearing above seeming but a summation of the effect of his testimony relative to gross neglect or improper treatment of the deceased.

Article 1202, P. C., provides as follows:

"The destruction of life must be complete by such act, agency, procurement or omission, but although the injury which caused death might not under other circumstances have proved fatal, yet if such injury be the cause of death, without its appearing that there has been any gross neglect or manifestly improper treatment of the person injured, it is homicide."

This article changed the rule which at common law was based upon the proposition that he who committed the first injury was the cause of death regardless of the improper treatment. However, we now find the law to be that although without the injury there would be no death, proof of gross neglect or improper treatment will call for an instruction upon the part of the court that if such death was brought about by improper treatment or gross neglect of the physicians, the accused would not be guilty of homicide. See McMillan v. State, 58 Tex. Cr. R. 525, 126 S. W. 875; Morgan v. State, 16 Tex. App. 593; Franklin v. State, 41 Texas Crim. R. 21; Johnson v. State, 43 Tex. Cr. R. 283, 65 S. W. 92.

In our early jurisprudence this rule was laid down in Powell v. State, 13 Tex. App. 244, as follows:

"It is an ancient and well settled principle of the law of homicide, that, if a wound causes a disease which produces death, the death is imputable to the wound. (Hale's P. C. 428; Whart. Cr. Ev., 382; 2 Whart. Am. Cr. Law, 1064; Kee v. The State, 28 Ark., 155; McAlister v. The State, 17 Ala., 439; Coffman v. The Commonwealth, 10 Bush. Ky., 495.) Mr. Greenleaf lays down the doctrine thus: 'If death ensues from a wound given in malice but not in its nature mortal, but which being neglected or mismanaged the party died, this will not excuse the prisoner who gave it; but he will be held guilty of the murder, unless he can make it clearly and certainly appear that the maltreatment of the wound, or the medicine administered to the patient, or his own misconduct, and not the wound itself, was the sole cause of his death; for if the wound had not been given, the party had not died. So, if the deceased were ill of a disease apparently mortal, and his death were hastened by injuries maliciously inflicted by the prisoner, this proof will support an indictment against him for murder; for an offender shall not apportion his own wrong.' (1 Greenl. Ev. Sec. 139.)"

This rule has been followed in many cases. See Wilson v. State, 126 S. W. (2d) 977, 136 Tex. Cr. R. 590; Gardner v. State, 44 Tex. Cr. 572, 73 S. W. 13; Duque v. State, 56 Tex. Cr. R. 214, 119 S. W. 687; Corpus Jur. Sec. Vol. 40, p. 855, and cases there cited; also 8 A. L. R. p. 522, note.

Under this condition of the law, appellant attempted to make proof of gross neglect and improper treatment. Evidently under the circumstances here present, neglect or improper treatment could only be shown by the testimony of those whose training had equipped them to testify as experts in such matters, that is to say, by the testimony of a physician or surgeon; and we find Dr. Nanney's testimony in answer to such proposition. After having been familiarized with the circumstances surrounding this incident and the treatment of the deceased, the doctor's answer could only be that there was improper treatment present or that no such improper treatment was shown. We find his answer thereto to be that none such was shown, and the jury evidently followed such testimony.

We then advert to the trial court's charge and find that he gave in the charge to the jury a presentation of the law as above referred to, and we see no fault to find therewith.

The motion for a rehearing will be overruled.

HAWKINS, P. J., absent.