## Walter Johnson v. The State.

No. 2443. Decided November 6, 1901.

**Homicide—Death from Neglect and Improper Treatment—Charge.**

On a trial for murder, where it was an issue whether deceased's death was caused by the wound inflicted by defendant or gross neglect or improper treatment of those in attendance upon him defendant was entitled to a fair affirmative presentation of his theory in the charge of the court to the effect that if the wound was not necessarily fatal, and would not itself have caused death, but deceased died from blood poisoning superinduced by either gross neglect or manifestly improper treatment by deceased or those in attendance upon him defendant would not be responsible for his death.

Appeal from the District Court of Harrison. Tried below before Hon. Marvin Turney, Special Judge.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

This is the second appeal in this case. See Johnson v. State, 42 Texas Criminal Reports, 377, where the facts are stated.

*W. H. Pope* and *W. C. Lane,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

This is the second appeal, this case having been reversed at a former term. Johnson v. State, 42 Texas Crim. Rep., 377. The facts attending the homicide are substantially as presented on the former trial. In addition thereto defendant introduced testimony tending to show that the death was not occasioned by the wound, but by neglect and bad treatment thereof. The only question that requires consideration is the charge of the court on that subject. The testimony of Dr. Morrison, the attending physician, on this question was substantially as follows: "I made a thorough and careful examination of the wound. The wound was just above the left eye, and about one inch long, and was a cut to the bone. I saw no abnormal symptoms at all. The wound was not a serious one nor a dangerous wound. There were no symptoms of concussion. The skull was not fractured. The wound was not sufficient to produce death, and, in my opinion, did not cause the death of the deceased. I stitched the wound up. Deceased did not complain of pain. He said his head hurt him some. * * * After he told me his head hurt him, I gave him a small tablet of morphine, and he went to sleep. I took five or six stitches in sewing up the wound. I first washed it out. I left some medicine with them to put on his head, and told them this would last until Thursday, and if he did not do well to let me know. Thursday or Friday they came, and I fixed up and

sent some medicine to deceased. The next Saturday I was sent for, to go to see him, but my wife was sick, and I had some other patients, and I told the person who came after me that I could not go that day, and told them to go and get Dr. Hall. The next day I started to see deceased, and heard before I got there that he was dead. This witness was shown the stick that defendant struck deceased with, and he said if defendant had struck deceased with this, where this wound was, with all his power, he would have fractured his skull, but the skull of deceased was not fractured."

Dr. Taylor, another witness for defendant, testified substantially as follows: That he made a post mortem examination of the skull of deceased, some days after he was dead. The skull was not broken or fractured. The wound was just above the right eye, and was about an inch in length. The wound had been stitched or sewed up, but the stitches had loosened from decomposition and the swelling of the head. That he found a large quantity of pus formed under the scalp. There were no indications of concussion of the brain at all. The skull was not fractured. The wound in the scalp extended to the bone. In witness' opinion, deceased died from blood poisoning, caused by the pus forming under the scalp. This pus extended all over the head. The wound was the primary cause of the blood poisoning. The sewing up of the wound, if antiseptically done, was the proper treatment for the injury, provided it had been closely attended and watched, so that it could be cleaned properly. That he did not regard the wound on deceased as a fatal wound, and did not find any concussion of the brain. The wound caused pus to form, and the pus superinduced blood poisoning. That it was not proper treatment to stitch a wound like that unless it were given close attention. That he did not think the wound received proper treatment.

The State introduced no testimony on this subject, and the case rested upon the testimony of appellant's witnesses. On this question the court charged the jury as follows: "The jury are charged that homicide is the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another. The destruction of life must be complete by such act or agency. But, although the injury which caused death might not, under other circumstances, have proved fatal, yet, if such injury be the cause of death, without it appearing that there has been any great neglect or manifest improper treatment by some other person, such as a physician, nurse, or other attendant, it would be homicide; and if the jury are satisfied from the evidence that the defendant struck deceased, and inflicted upon him a wound which was not in itself necessarily mortal, and that the wound inflicted produced blood poisoning or any other effect which would result in the death of the deceased, the party inflicting the injury would be as guilty as if the wound was one which would of itself inevitably lead to death." Appellant asked some special charges presenting this phase of the case to the jury, and excepted to the charge given on various grounds.

If appellant was entitled to a charge on this subject at all, he was entitled to a fair affirmative presentation of his theory of the case to the jury. The charge given was not only a negative charge, but in the application of the law to the facts appellant's theory was omitted altogether, and the jury were simply told if the wound produced was not necessarily mortal, but that it produced blood poisoning, defendant would be guilty of the homicide. "He asked for bread, and the court gave him a stone." The court should have given an affirmative charge to the effect that if the wound was not necessarily of a fatal character, and would not of itself have caused the death of deceased, but that deceased died from blood poisoning superinduced by either gross neglect, or manifestly improper treatment by deceased, or those in attendance upon him, appellant would not be responsible for his death. This we understand to be the law on this subject, and the evidence adduced by appellant required of the court to give the charge. See article 652 Penal Code; Morgan v. State, 16 Texas Crim. App., 593; Franklin v. State, 41 Texas Crim. Rep., 21.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.