## T. B. SATTERWHITE v. THE STATE.

No. 12153.   Delivered April 3, 1929.
Rehearing denied May 29, 1929.

The opinion states the case.

*Sanders & Atchison* of Breckenridge, and *W. J. Cunningham* of Abilene, for appellant.

*J. H. Beavers* of Winnsboro and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is manslaughter; the punishment confinement in the penitentiary for five years.

Appellant was indicted by the grand jury of Stephens County for the offense of murder. He was tried in the district court of Stephens County and found guilty of the offense of manslaughter. Thereafter his motion for a new trial was granted and the venue changed on the motion of the court to Shackelford County. Thereafter the venue was changed from Shackelford County to Taylor County where the present trial was had. The offense was committed prior to the repeal of the statute defining manslaughter. By reason of the fact that the grade of offense had been reduced to manslaughter, on the present trial a charge of murder was not submitted.

Appellant was a justice of the peace, residing in the village of Caddo in Stephens County. Jessie Hudman, deceased, resided near Caddo and was engaged in the dairy business. Some of the property of deceased had been attached by virtue of a writ issued by appellant in his official capacity as a justice of the peace. Shortly prior to the homicide appellant and deceased met near appellant's office. They engaged in a fight in the presence of several witnesses. After the fight had ceased appellant and deceased left the scene of the difficulty. Deceased entered a store nearby. Appellant went to the place of business of W. R. Clepper, a deputy sheriff. Clepper came out and got into the car with appellant and they went to Clepper's residence where Clepper got his gun. Within approximately five minutes after the difficulty with deceased appellant and Clepper went to Watkins' Store where deceased and his brother, Slim Hudman, had gone. They entered the store, a scuffle ensued between deceased and appellant, and appellant shot and killed deceased. It was the state's theory that, impelled by the fact that deceased had whipped him, appellant armed himself and went to the store for the purpose of killing deceased. It was appellant's theory that at the time he had the difficulty in the street with deceased deceased had cursed, hollered and used abusive language in such manner as to constitute an offense against the public peace, and that he, appellant, had left the scene for the purpose of securing the aid of Clepper in order that an arrest of deceased might be effected. In support of the state's theory wit-

nesses testified that appellant and Clepper entered the store with drawn pistols at a time when deceased was engaged in washing his hands; that Clepper told the parties in the store to stand where they were; that appellant said to deceased: "Come out of there, you s— of a b—, I'll show you how to try to bull-doze everybody in town"; that appellant approached deceased; that deceased grabbed appellant's gun; that appellant's gun went off; that appellant continued to shoot at deceased; that deceased was unarmed. Appellant and his witnesses testified that prior to the homicide deceased had assaulted appellant as he was preparing to enter his office; that he knocked appellant down; that during the difficulty appellant's brother, Slim Hudman, kept bystanders from interfering; that deceased attempted to seize a hatchet and strike appellant in the head; that after the parties had quit fighting deceased cursed and hollered, threw his cap up and said to the crowd that if the s— of a b— (referring to appellant) had any friends to let them walk out; that appellant left the scene of the difficulty, went to his office and secured his pistol and immediately sought the assistance of Clepper; that he informed Clepper that he had been beaten up by the Hudman boys; that he wanted him to go with him to arrest them; that Clepper secured his pistol and that within approximately five minutes appellant and Clepper entered Watkin's store for the purpose of arresting deceased. Appellant and Clepper denied that they entered the store with drawn pistols and appellant said that he did not draw his pistol until deceased backed toward some meat blocks where knives were usually kept and near a shelf where he, appellant, knew a pistol was kept. Touching his purpose in entering the building appellant said: "When we went in there I had in mind, and when I went down there I did not know that Mr. Clepper knew this Hudman from any other one, and I went in there to point him out, just like I always did everybody else, unless he knows him. When I went in the house I went in there for the purpose of arresting Jessie Hudman or having him arrested, or pointing him out to Mr. Clepper. I was going in there to point him out to Mr. Clepper and have Mr. Clepper arrest him. After Mr. Clepper arrested him I was going to file a charge against him, like I did anybody else after they are arrested. He was in the act of disturbing the peace when I left and I thought still was." As to their purpose in entering the store Clepper corroborated appellant. Appellant testified that he told deceased that he was going to arrest him; that when deceased went among the meat blocks and near the place where he, appellant, knew a pistol was kept, he thought

it was time for him and Clepper to protect themselves; that he pulled his pistol and endeavored to bring deceased from behind the counter; that deceased reached up and got a pistol from a shelf; that he, appellant, jumped at deceased and caught him by the wrist with his left hand; that deceased fired at him; that thereupon he fired upon deceased; that deceased fell; that he picked up the pistol which deceased had used from the floor where it had fallen; that he delivered the pistol to a witness; that he fired upon deceased in an endeavor to protect his life; that deceased had shot two holes through his, appellant's, coat. Some of appellant's witnesses testified to having seen the holes in appellant's coat and to the fact that appellant had left the store with the gun he claimed was used by deceased and delivered it to a witness. They further testified that the gun had been recently fired.

The court charged on self-defense, but limited appellant's right to defend himself by charging the jury that if appellant did not have a warrant of arrest and entered the building where deceased was located for the purpose of arresting him that the arrest would be illegal. Appellant timely and properly objected to such charge on the ground that the court was not warranted under the evidence in instructing the jury that the arrest was illegal if appellant had no warrant. It was undisputed that neither appellant nor Clepper had a warrant of arrest at the time they entered the building where deceased was located. Hence the charge complained of under the evidence in this case was tantamount to depriving appellant of the perfect right of self-defense and was in effect a charge under which the jury could hardly have done less than find appellant guilty of manslaughter.

The testimony of appellant and his witnesses, if believed, justified the conclusion that deceased had committed an offense against the public peace in appellant's presence and within his view. Article 474 P. C.; Article 475 P. C.; Haverbekken v. Hollingsworth, 250 S. W. 261. Article 212 C. C. P. authorizes a peace officer or any other person to arrest without warrant an offender "when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as 'an offense against the public peace.' " In discussing the provisions of this article as applied to appellant, we are concerned solely with appellant's right as a private person to arrest without warrant. While this court has held that a magistrate is a peace officer within the meaning of the terms of Article 484 P. C., which, among other things, makes inapplicable to peace offi-

cers the provisions of Article 483 P. C. defining the offense of unlawfully carrying arms, we have also held that the duties of peace officers as defined by the statute are broader than those of a justice of the peace. Tippett v. State, 189 S. W. 485; Hooks v. State, 158 S. W. 808; Jones v. State, 65 S. W. 92; Morawietz v. State, 80 S. W. 997; Davis v. State, 275 S. W. 1060. A justice of the peace is a magistrate. Article 33 C. C. P. Under the statute relating to the duties of peace officers a justice of the peace is not classified as a peace officer. Article 36 C. C. P.

Appellant was not a peace officer in the sense that his right to effect arrests was governed by the statutes defining the duties of peace officers. However, under the terms of Article 212, supra, if a breach of the peace was committed by deceased in his presence or view appellant had the right at the time of the commission of the offense to arrest deceased without a warrant. The question is: Did the interval of time between the commission of the offense and the attempted arrest of deceased affect appellant's right to arrest him without a warrant? Bearing on this question we quote from Corpus Juris, Volume 5, page 413, as follows:

"At common law, and except where changed by statute, it being the duty of every citizen to assist in preserving the peace, any private person may arrest without a warrant one who commits a breach of the peace in his presence. * * * It is essential, to justify such an arrest, that the offense committed shall amount to a breach of the peace, that such offense shall be actually committed or attempted in the presence of the person making the arrest, and that the arrest be made at the time when the offense was committed, or while there is a continuing danger of its renewal. No private person has the right to make an arrest for a misdemeanor without a warrant after the event, or upon mere information or suspicion."

It has been held that the right to make an arrest in cases of breaches of the peace is confined to the time of the commission of the offense. Cook v. Nethercote, 6 C. & P. 741, 25 E. C. L. 627. Meyer v. Clark, 41 N. Y. Super. Ct. 107. It has also been held that the right of a peace officer to make an arrest without a warrant for a misdemeanor or breach of the peace committed in his view, extends to a reasonable time after the commission of the offense, provided the officer immediately sets about the arrest and follows up the effort until the arrest is made. See Note at page 623, 9 Am. & Eng. Annotated Cases; Ruling Case Law, Volume 2, page 451. We

quote from People v. McLean, 68 Michigan 480, 36 N. W. 231, as follows:

"The common law never allowed the arrest of persons, who were either guilty of or suspected of having committed misdemeanors, without a warrant issued by lawful authority, except in cases of an actual breach of the peace committed in the presence of the officer, while the person was taken in the act or immediately after its commission. *This exception was made, not to bring the offender to justice, but in order to preserve the peace, which by the common law was regarded as of the utmost consequence.*"

In our state, the case of Johnson v. State, 5 Tex. Cr. App. 43, seems to support the proposition that in cases of a breach of the peace in the presence of a private person the arrest must be made at the time of the commission of the offense, or else a warrant will be required if at the time the arrest is made the public peace has been restored. In Johnson's case, a breach of the peace was committed by two parties in the presence of a night-watchman. Having made an unsuccessful attempt to arrest the parties, the nightwatchman sought and immediately secured the assistance of a policeman. They returned and found that the parties had gone to their room. They went to the room. The parties were not at the time engaged in disturbing the peace. They resisted arrest and Johnson cut the nightwatchman with a knife. The court, in substance, charged the jury that the arrest without warrant was legal. In reversing the case, Judge Ector, speaking for the court, after referring to the articles dealing with the right to arrest without warrant, said:

"These articles prescribe the only circumstances under which an arrest can be made by a peace officer without warrant, except when it is done for the prevention of offenses as prescribed by Articles 2540 and 2544. In every other case the officer must be armed with a warrant before he can lawfully lay his hands on a citizen to deprive him of his liberty. No citizen of the state shall be deprived of his liberty except by due course of the law of the land. Bill of Rights, Section 19."

If the purpose of permitting an arrest without warrant of one who is committing a breach of the peace in the presence of the arresting party is not to bring the offender to justice, but to restore the public peace, it would seem to follow that after the public peace had been restored the right to arrest without warrant would no longer exist. In discussing the statutes of the class here under con-

sideration, the Supreme Court of Ohio, in State v. Lewis, 33 N. E. 407, said:

"Statutes of this class, though enacted in the interests of public order, yet derogate from the liberty of the citizen, and if not strictly construed, which the weight of authority seems to hold they should be, yet are not to be extended by a loose or liberal construction. The authority should be limited to the necessity for its exercise. Where an affray is in progress, or an offense in the course of commission, in the presence of an officer, his duty is to prevent its continuance or completion. To accomplish this effectually, the power to at once apprehend the offender is necessary. Under such circumstances, to stay his hand until a warrant could be obtained would paralyze his power to prevent crime and maintain the public peace. So, perhaps, the legality of an arrest without warrant might be maintained where the affray or other misdemeanor had already been completed when the officer appeared, if the offender was present, and public order had not yet been completely restored. Where, however, the offense is an accomplished fact, its prevention is no longer possible, and, if public order has been fully restored before the officer appears, the power to arrest without warrant for a mere breach of the peace or other minor offense is no longer necessary; for the end—to maintain the public peace—for which such authority is given is no longer attainable. Even where such an offense has been committed in the presence of an officer, his power to arrest the offender without warrant should be promptly exercised, or it will be lost."

It is observed that our legislature has conferred broader powers upon peace officers relative to arrests without warrants for felonies than in the case of arrests for misdemeanors. Article 212, supra, permits peace officers and private persons to arrest without warrant offenders committing felonies within their presence or within their view, whereas, respecting the right to arrest for misdemeanors committed in their presence or view, such right is limited where the arrest is made without warrant to offenses against the public peace. A peace officer may arrest without a warrant where it is shown by satisfactory proof to him upon the representation of a credible person that a felony has been committed and that the offender is about to escape, so that there is no time to procure a warrant. Article 215 C. C. P. These provisions of the statute indicate to our mind that it was the intention of the legislature in cases of felony to provide all adequate means consistent with the liberty of the citizen for bringing offenders to justice, and that it was deemed proper under the

condition stated in the statutes to permit the arrest without warrant for felonies of every character irrespective of the gravity of the offense. On the contrary, in permitting the arrest without warrant for misdemeanors, the power conferred upon peace officers and others is more restrictive. Under Article 212, supra, the misdemeanor involved must be an offense against the public peace before the authority to arrest without warrant exists. It is noted that under Article 73 C. C. P., in the case of an emergency, a magistrate may himself immediately arrest a person who shall threaten within the hearing of such magistrate to take the life of another. Again when in the presence or observation of a magistrate an attempt is made by one person to inflict an injury upon the person or property of another the magistrate may himself arrest the offender. Article 74 C. C. P. As to theft, irrespective of whether the offense is a felony or misdemeanor, all persons have a right to prevent its consequences by seizing any personal property which has been stolen and bringing it with the supposed offender, if he can be taken, before a magistrate for examination or delivering the same to a peace officer for that purpose. In order to justify the seizure under such conditions there must be reasonable ground to suppose the property to be stolen and the seizure must be openly made and the proceedings had without delay. Article 325 C. C. P. Without undertaking to say that we have stated all of the conditions under which an arrest may be made for a misdemeanor without a warrant of arrest, we think it apparent that throughout our Code of Procedure well-defined distinctions, as illustrated by the statutes referred to, are maintained between felonies and misdemeanors relative to the power and authority to arrest without warrant. Hence it would seem that in cases of felony it was the purpose of the legislature in authorizing arrests without warrant to insure the apprehension and trial of the offender, and that in cases of misdemeanor the purpose was to prevent injury to the person or property (Articles 73 and 74, supra) and to restore the public peace in the case of a breach of the peace, (Article 212, supra). Otherwise it would appear that the legislature would have authorized the arrest without warrant of persons committing misdemeanors in the presence or within the view of peace officers or private persons irrespective of the character of the offense. If such was the purpose of the legislature,—and we think it was—it logically follows that an arrest without warrant for a past breach of the peace, although it was committed in the presence of the arresting party, is not authorized unless made at the time when the offense was

committed or while there is continuing danger of its renewal. Here the arrest was not made at the time when the offense was committed, and when it was attempted the public peace had been restored. Hence the attempted arrest was illegal in so far as the provisions of Art. 212, supra, are concerned. In 5th Corpus Juris, pages 406–407, the rule is stated as follows:

"An officer's right to make an arrest without a warrant for past offenses is limited to those of the grade of felony."

When a felony or breach of the peace is committed in the presence or within the view of a magistrate he may verbally order a peace officer to arrest the offender, and it becomes the duty of the peace officer to execute the order. Article 213 C. C. P. Again, when offenses of the character mentioned are committed in the presence or view of a magistrate, he may issue a warrant of arrest for the offender without complaint being first filed. Article 220 C. C. P. Appellant does not contend in his brief that the provisions of Article 213, supra, had application, and our discussion of the matter will not be extended. Suffice it to say that if we attempted to make application of said article, we would be met with the fact that there is nothing in the record to indicate that deceased knew that Clepper was a deputy sheriff and that he had been ordered by appellant to arrest deceased. Appellant testified that he didn't know at the time whether Clepper knew deceased. Neither Clepper nor appellant, as far as the record reflects the matter, informed deceased that Clepper was a peace officer and was there for the purpose of arresting him under the order of appellant. Hence it appears that the provisions of the article last mentioned are without application.

It is the rule that "if authority to make the arrest is wanting, the person attempting such arrest is a trespasser, and the person so arrested can resist him regardless of his knowledge that the arrest was illegal using such force as is reasonably necessary to prevent the arrest or free himself from the illegal restraint." Branch's Annotated Penal Code of Texas, Section 1980; Alford v. State, 8 Tex. Cr. App. 563; Cortez v. State, 69 S. W. 537; Cortez v. State, 83 S. W. 812; Earles v. State, 85 S. W. 1.

We are constrained to hold that under the evidence the court did not err in charging the jury that the arrest of deceased without warrant was illegal.

Appellant presented his second application for a continuance, alleging the absence of a witness who had been present on a former trial of the case but who had not testified on such occasion. It was

averred in the application that the absent witness would testify if present that he saw deceased fire two shots at appellant before appellant fired at deceased. It is stated in the application that the witness was under process and that he had not been used upon the former trial because of the fact that he had not told appellant or his attorneys that he would testify to such facts until after said former trial. If the court erred in overruling the application, we think his action in overruling the motion for new trial based on said application in the light of the entire evidence heard on the trial was warranted. It is proper in passing upon a supposed error in refusing a continuance to look to the evidence adduced on the trial. Branch's Annotated Penal Code, Section 305. The trial court was justified in concluding that if the absent testimony had been before the jury it was not reasonably probable that a verdict more favorable to appellant would have resulted. Mr. Branch, in his Annotated Penal Code of Texas, Section 319, states the rule as follows:

"It is not in every case however where the absent testimony is material and probably true that the appellate court will revise the ruling of the trial judge in denying a continuance and a new trial to defendant. It is only in a case where, from the evidence adduced on the trial, the appellate court is impressed with the conviction, not merely that the defendant might possibly have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury that a verdict more favorable to the defendant would have resulted."

We have carefully examined every contention made by appellant and fail to find reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—Appellant was indicted in the District Court of Stephens County on the 3rd day of May, 1926. On the 21st of February, 1927, after pleading to the indictment, the venue, upon the motion of the trial court, was changed to Shackelford County. The appellant entered into a recognizance to appear before the district court of that county. An incomplete transcript

of the order of the district court of Stephens County, dated March 1, 1927, was sent to Shackelford County. On the 28th day of March, after pleading to the indictment in Shackelford County, the venue, was changed to Taylor County, and the appellant entered into a recognizance to appear in that county as shown by the certified copy of the order of the district clerk of Shackelford County dated April 12, 1927. There was prepared a supplemental transcript by the district clerk of Stephens County which shows the empaneling of the grand jury, the presentment of the indictment, the trial and conviction of the appellant, the order granting a new trial, the entry of the appellant's plea and order of the court changing the venue to Shackelford County, and the recognizance of the appellant. The above bears the certificate of the district clerk of Stephens County, dated the 4th day of May, 1927, and appears to have been filed in the district court of Taylor County on the 2nd day of May, 1927. The record shows that the original indictment was before the district court of Taylor County at the time of the trial which resulted in this appeal. The indictment, by indorsement, appears to have been filed in the district court of Stephens County on the 3rd day of May, 1926, and to have been filed on the 15th day of April in the district court of Taylor County. As it appears here, there is no file mark on the indictment showing it to have been filed in Shackelford County. However, the judgment in the transcript from Shackelford County shows that on the 28th day of March, 1927, the appellant appeared and plead to the indictment.

On this appeal for the first time the appellant challenges the authority of the district court of Taylor County to try the appellant and to enter the judgment against him. The judgment recites that the appellant was duly arraigned and plead not guilty to the indictment on the 21st day of May, 1928. Article 570, C. C. P., 1925, reads as follows:

"When an order for a change of venue has been made, the clerk of the court where the prosecution is pending shall make out a true transcript of all the orders made in the cause, and certify thereto under his official seal, and send the same, together with all the original papers in the case, to the clerk of the court to which the venue has been changed, first making a correct certified copy of the same, and retain such copy in his office to be used in case any original be lost."

It has often been declared that deficiencies in the transcript may be supplied by a supplemental transcript. Wolfforth v. State, 31

Tex. Crim. Rep. 387; Brown v. State, 6 Tex. Crim. App. 286; Biggerstaff v. State, 59 Tex. Crim. Rep. 575; Hollingsworth v. State, 87 Tex. Crim. Rep. 399.

In the absence of any challenge to the jurisdiction of the district court of Taylor County when the appellant, at the time of his trial, plead to the indictment, the recitals in the judgment of conviction may be looked to and the presumptions in favor of the regularity of the action of the court may be considered in passing upon the claim that the indictment against the appellant which is copied in the transcript was not regularly before the court when the case was tried. See Hickox v. State, 104 Tex. Crim. Rep. 649. No such fault in the procedure is disclosed by the record as will warrant a reversal of the judgment.

The other matters to which the motion is addressed are regarded as having been properly determined in the opinion on the original hearing.

The motion is overruled.

*Overruled.*