J. DENIS MORAN, Director of State Courts Supreme Court ofWisconsin
You have requested my opinion as to the right of a circuit judge in this state to carry a concealed weapon. Accompanying your letter is a memorandum from Judge Jon B. Skow of Racine County expressing some anxiety about his personal safety and requesting an opinion as to whether a circuit judge "has the right to protect himself from physical harm to the extent that he may actually carry a concealed weapon if he deems it necessary." It is my opinion that he legally cannot.
The prohibition against carrying a concealed weapon is set forth in sec. 941.23, Stats., as follows: "Any person except a peace officer who goes armed with a concealed and dangerous weapon is guilty of a Class A misdemeanor."
The term "peace officer" is defined in sec. 939.22(22), Stats., as "any person vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes."
Although, for the reasons set forth in the balance of this opinion, I do not believe a circuit judge is a "peace officer" for purposes of the *Page 67 
carrying concealed weapon statute, I recognize that a contrary argument could be made based upon sec. 757.02(3), Stats., which reads: "The judges of . . . [circuit] courts shall be conservators of the peace, and have power to administer oaths and take the acknowledgements of deeds and other written instruments throughout the state."
Black's Law Dictionary 378 (4th Ed. Rev. 1968), defines conservators of the peace as follows:
 Officers authorized to preserve and maintain the public peace. In England, these officers were locally elected by the people until the reign of Edward III, when their appointment was vested in the king. Their duties were to prevent and arrest for breaches of the peace, but they had no power to arraign and try the offender until about 1360, when this authority was given to them by act of parliament, and "then they acquired the more honorable appellation of justice of the peace." 1 Bl. Comm. 351.
(A detailed history of the evolution of this office is set forth in In re Sanderson, 289 Mich. 165, 286 N.W. 198, 200, 201
(1939).)
There is some authority for equating the term "conservators of the peace" with the term "peace officers." Ex parte Levy,204 Ark. 657, 163 S.W.2d 529, 532 (1942); Jones v. Slate, 65 S.W. 92
(Tex. 1901); Tippett v. State, 80 Tex. Crim. 373, 189 S.W. 485,486 (1916); Patton v. State, 129 Tex. Crim. 269, 86 S.W.2d 774,776 (1935); but, see, Satterwhite v. State, 112 Tex. Crim. 574,17 S.W.2d 823, 825 (1929) (not a peace officer for certain other purposes).
The most cited case for the proposition that judges, as conservators of the peace, are thereby authorized to carry concealed weapons is Jones v. State, 65 S.W. 92 (Tex. 1901). The Texas Court of Criminal Appeals reversed the conviction of a county judge for carrying a concealed weapon. The pertinent statute provided an exception for "peace officers" but defined them as "sheriffs, deputies, marshals, constables, policemen, and any private person appointed to execute criminal process." The Texas Constitution expressly provided that county judges shall be "conservators of the peace," and certain statutes imposed specific duties upon them to preserve the peace, prevent injury and suppress riots, etc. Therefore, the court found them to be peace officers within the exception to the concealed weapon law.Id. at 92. Fifteen years later this precedent was held to be binding upon *Page 68 
an obviously reluctant court in reversing a similar conviction.
Tippett.
 Were this an original proposition, the writer would hold that the Legislature, in exempting peace officers from the provisions of [the concealed weapon statute] intended and in fact did exempt only such officers as it (the Legislature) had defined as peace officers in article 43 of the Code of Criminal Procedures. It defines as peace officers sheriffs, and their deputies, constables, marshals, or policemen of incorporated cities or towns, and the private citizens specially appointed to execute criminal process. We think this is the class intended to be exempted by the Legislature and that judges, being judicial and civil officers, would only be exempt when in the discharge of their duties.
Id. at 486.
Although the Texas courts continued to feel bound by staredecisis, in Wisconsin there is no such frontier precedent to impair present day judgment.
Illinois has come to a conclusion contrary to that arrived at by the Texas Court of Criminal Appeals in Jones. People v. Boa,143 Ill. App. 356 (1908). The Illinois case involved a conviction of one Andrew Boa for a violation of the Illinois statute prohibiting the carrying of a concealed weapon. That statute exempted "sheriffs, coroners, constables, policemen, or other peace officers." Id. at 358. Another statute provided:
 All judges of courts of record within their respective jurisdictions, and justices of the peace in their respective counties, are conservators of the peace and shall cause to be kept all laws made for the preservation of the peace, and may require persons to give security to keep the peace or for their good behavior or both as provided by this act.
Id. at 359.
Boa had argued that he should be exempted from the provisions of the concealed weapon statute because, inter alia, he was a justice of the peace and, thereby, a conservator of the peace which office, he argued, was the equivalent of a "peace officer." The Illinois court disagreed. *Page 69 
 While it is true that by the section of the statute last above set forth, the judges of courts of record and justices of the peace, within the limits therein named, are made conservators of the peace, which gives them large latitude and power in doing those things necessary to preserve the peace, yet after all the authority given them is that which pertains to judicial, not executive, officers.
 In our opinion the section of the statute above referred to, which exempts "other peace officers" from the law against carrying concealed weapons, refers to and intends to include only those officers whose duties and powers are similar to the duties and powers of the officers named in said section just before the words "other peace officers," namely, sheriffs, coroners, constables and policemen, that is, to executive officers and not to judicial officers and that therefore plaintiff in error did not simply by virtue of his office as justice of the peace, come within the exemption.
Id. at 359.
The provision in the Wisconsin Statutes making judges conservators of the peace has been on the books since the inception of our statehood. "The judges of the circuit courts shall be conservators of the peace throughout the state and shall have the same powers to preserve the peace as have heretofore been conferred upon the judges of the district court of the territory of Wisconsin." Ch. 21, sec. 6, Laws of 1848. Nevertheless, this term has never been defined in Wisconsin law. A similar dearth of authority was encountered by the Iowa Supreme Court in discussing that state's constitutional provision making certain judges conservators of the peace. Newby v. District Courtof Woodbury County, 259 Iowa 1330, 147 N.W.2d 886, 892 (1967). Although the facts of that case do not relate to the issue of carrying a concealed weapon, it is interesting to note that the Iowa court, taking into account the historical perspective of the office, did not find the term to be synonymous with "peace officer."
 Even after . . . [they acquired the title of justice of the peace] many public officers were styled conservators of the peace, not as a distinct office but by virtue of the duties pertaining to their office. In this sense, the term might include the king himself, the *Page 70 
lord chancellor, justice of the King's bench and master of the roles as well as peace officers.
Id. at 892 (emphasis supplied).
The Wisconsin carrying concealed weapon prohibition had its origin in ch. 7, sec. 1, Laws of 1872. From then until 1955 the exemption from its provisions applied to "any policeman or officer authorized to serve process." Clearly, this did not include those judicial officers who had, since 1848, been deemed "conservators of the peace." In the rewrite of our Criminal Code in 1955, the term "peace officer" was used for the first time in the statute. Ch. 696, sec. 1, Laws of 1955. This same law created the present definition of the term "peace officer" as set forth above. There is nothing in the history of that legislation which would indicate that the Legislature intended for the first time to exempt judicial officers of this state from the provisions of the carrying concealed weapon statute. The Legislative Council comment to this section emphasized the fact that a person must have a duty and not merely a power to maintain public order or to arrest for crime. Judiciary Committee Report on the Criminal Code, Wisconsin Legislative Council, Vol. 5, February 1953.
In a leading Wisconsin case involving the carrying concealed weapon statute, our supreme court enumerated sixteen offices which could come under the statutory definition of "peace officer." It is noteworthy that the court made no reference whatsoever to any judicial office or conservator of the peace.State v. Williamson, 58 Wis.2d 514, 523, 206 N.W.2d 613 (1973). Although that list was dicta and not necessarily exhaustive, I find it to be significant and probative of the question here at hand.
In designating judges of this state as conservators of the peace, the Legislature has simply recognized the historical common law backdrop from which the office of justice of the peace emerged. A conservator of the peace was "a common law officer whose duties, as such, were to prevent and arrest for breaches of the peace in his presence." 12 C.J.S. Conservator ofthe Peace, at 522. Considering the historically limited scope of police power of this office together with the total lack of statutorily imposed duties upon the office in this state, it is my opinion that a conservator of the peace is not a peace officer under the law of this state. *Page 71 
Moreover, the incompatibility between the duties of circuit judge and peace officer is manifest. This office has consistently held similar relationships to involve clear conflicts of interest. See, e.g., 11 Op. Att'y Gen. 242 (1922) (justice of the peace and undersheriff incompatible); 17 Op. Att'y Gen. 327 (1928) (mayor and justice of the peace incompatible); and 36 Op. Att'y Gen. 483 (1947) (clerk of municipal court and deputy sheriff incompatible).
I am aware of no authority which would support a proposition that a judge has any inherent power to carry a concealed weapon. Recently our supreme court has indicated that a primary feature of the inherent power of courts is that "the power must be such that it is related to the existence of the court and to the orderly and efficient exercise of its jurisdiction." Jacobson v.Avestruz, 81 Wis.2d 240, 247, 260 N.W.2d 267 (1977). Even those jurisdictions which have upheld the right of a judicial officer to carry a concealed weapon have done so on the basis of constitutional and statutory provisions and not according to any theory of inherent power of judges or courts.
Similarly, the carrying concealed weapon prohibition does not violate the separation of powers. In this respect, our court has stated that in examining into the power of the Legislature to act, the inquiry is not whether there is a grant of power but whether there is a restriction. Buse v. Smith, 74 Wis.2d 550,564, 247 N.W.2d 141 (1976). As stated above, there is no inherent constitutional power possessed by a judge authorizing him to carry a concealed weapon. In view of this, there can be no question but that the legislative prohibition contained in sec.941.23, Stats., is not vulnerable to attack as a violation of separation of powers. A violation of the separation of powers comes about when one department of government denies to another its appropriate power and attempts to assume such power itself.In re Kemp, 16 Wis. 359 (1863); Goodland v. Zimmerman,243 Wis. 459, 10 N.W.2d 180 (1943). Prohibitions against carrying concealed weapons containing exemptions for peace officers are among the most common provisions in the criminal codes of the various states. See, 94 C.J.S. Weapons sec. 9. Yet, never has such a statute been demonstrated to be vulnerable to attack on the basis of a constitutional separation of powers theory.
By this opinion it should not be inferred that judges of this state are powerless to protect themselves from actual personal danger. Obviously, judges have the same rights of self-defense as do all other *Page 72 
citizens of this state. Sec. 939.48, Stats. More importantly, however, I believe that a member of the judiciary of this state probably has a constitutional right to physical protection "when there is just reason to believe that he will be in personal danger while executing the duties of his office." In re Neagle,135 U.S. 1, 2, 58-68 (1890). Obviously, it is impossible to delineate all situations which would require such protection. It is a matter involving reason and common sense and calling for good faith cooperation between executive officers, including that of sheriff, and members of the judiciary.
BCL:JDH