LEE ANN DAUPHINOT, Justice,
dissenting.
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[1]
The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.[2]
The conscientious majority carefully follows precedent of the Texas Court of Criminal Appeals. But by doing so, they achieve a result that similarly elevates article 14.03 of the code of criminal procedure over the warrant requirements found in both the federal and state constitutions.[3]
Nobody saw who drove the car. Other than the redundancy of the number, there was no evidence that connected the parking space 87 where the Good Samaritan saw the silver Hyundai park to the apartment where the officers found Appellant. Indeed, the officers did not verify the Samaritan’s claim that the car was in space 87 or whether any car in that space had been driven recently.
Detective Colbath testified that the police rang the doorbell at Appellant’s apartment door, and it took her five to ten minutes to come to the door. Did he mean that they rang the bell once and waited five to ten minutes until she came to the door, or did he mean that they rang it repeatedly? That is, does the evidence show that the police rang Appellant’s doorbell as a guest or as a figure of authority demanding that she open the door?
The majority also states, as part of the article 14.03 justification of Appellant’s warrantless arrest, that her home was a suspicious place. Fascinating. And when did her home become this suspicious place? Historically, warrantless arrests were permissible only in a public place when the officer saw the offense committed, unless the officer was in hot pursuit.[4] Although *606 addressing warrantless searches, a substantially lesser Fourth Amendment incursion than seizures, the Texas Court of Criminal Appeals has explained,
[T]he Court made clear that “no exigency is created simply because there is probable cause to believe that a serious crime has been committed.” Nothing in Welsh suggests or even implies that a more “serious” offense validates a per se exception to the warrant requirement. To the contrary, the Court made clear that its skepticism regarding whether a “minor offense” would ever be a factor in the exigent-circumstances calculus should not be construed as an endorsement of a per se exigency rule where a “serious crime” is involved. Rather than imply a new exception to a warrantless search, the Court limited Welsh to a traditional, exigent-circumstances analysis. And reading Welsh as elevating the gravity of the offense to a singularly determinative factor would be inconsistent with subsequent opinions by the Supreme Court admonishing lower courts for reading Welsh “far too broadly” and restating that its opinion went to a much more limited point that “war-rantless entry to arrest a misdemeanant ... should be rare.” Stanton v. Sims, — U.S. -, 134 S.Ct. 3, 6-7, 187 L.Ed.2d 341 (2013) (citing Welsh v. Wisconsin, 466 U.S. [740,] 753, 104 S.Ct. 2091[, 2099, 80 L.Ed.2d 732 (1984)]); see also Illinois v. McArthur, 531 U.S. 326, 336, 121 S.Ct. 946[, 952-53], 148 L.Ed.2d 838 (2001) (refusing to consider the underlying offense as an important factor given that the case involved temporary restriction outside the home, rather than warrantless entry into the home like in Welsh ).[5]
The officers believed that Appellant was intoxicated and told her to come outside to a public place. Surely no one will suggest that the police could have arrested Appellant for public intoxication when they were the ones who told her to come outside to a public place, based on their belief that she was intoxicated inside the private apartment. The majority, relying on caselaw based on equally questionable logic, concludes that her mere presence in her own apartment converted that apartment into a suspicious place.
Although the majority refuses to find that Appellant was detained before she performed the field sobriety tests, Detective Colbath got it right. The test to be applied is whether, from the suspect’s point of view, there has been such a display of authority that “a reasonable person would have believed that he was not free to leave.”[6] Detective Colbath told the truth. Appellant was not free to slam the door in the officers’ faces and to refuse to answer their questions from the point she first opened the door. And once she was outside her apartment, does anyone seriously contend that the officers would have allowed her to go back inside her home and lock the door? Why, then, did they not advise Appellant of her right not to answer their questions and of her right to consult with an attorney?
The majority relies on established case law in holding that driving while intoxicated is a breach of the peace. To my own discredit, I also have joined this bandwagon and ignored the real meaning of the law permitting warrantless arrests for misde *607 meanor breach of the peace.[7] Almost ninety years ago, in Satterwhite v. State,[8] the Texas Court of Criminal Appeals explained,
It has been held that the right to make an arrest in cases of breaches of the peace is confined to the time of the commission of the offense. It has also been held that the right of a peace officer to make an arrest without a warrant for a misdemeanor or breach of the peace committed in his view extends to a reasonable time after the commission of the offense, provided the officer immediately sets about the arrest and follows up the effort until the arrest is made. We quote from People v. McLean as follows:
The common law never allowed the arrest of persons, who were either guilty of or suspected of having committed misdemeanors, without a warrant issued by lawful authority, except in cases of an actual breach of the peace committed in the presence of the officer, while the person was taken in the act, or immediately after its commission. This exception was made, not to bring the offender to justice, but in order to preserve the peace, ivhich by the common law was regarded as of the utmost consequence.
In our state, the case of Johnson v. State seems to support the proposition that in cases of a breach of the peace in the presence of a private person the arrest must be made at the time of the commission of the offense, or else a warrant will be required if at the time the arrest is made the public peace has been restored. In Johnson’s Case, a breach of the peace was committed by two parties in the presence of a night watchman. Having made an unsuccessful attempt to arrest the parties, the night watchman sought and immediately secured the assistance of a policeman. They returned and found that the parties had gone to their room. They went to the room. The parties were not at the time engaged in disturbing the peace. They resisted arrest, and Johnson cut the night watchman with a knife. The court, in substance, charged the jury that the arrest without warrant was legal. In reversing the case, Judge Ector, speaking for the court, after referring to the articles dealing with the right to arrest without warrant, said:
These articles prescribe the only circumstances under which an arrest can be made by a peace officer without warrant, except when it is done for the prevention of offenses as prescribed in articles 2540, 2544. In every other case the officer must be armed with a warrant before he can lawfully lay his hands on a citizen to deprive him of his liberty. No citizen of the state shall be deprived of his liberty except by due course of the law of the land.
If the purpose of permitting an arrest without warrant of one who is committing a breach of the peace in the presence of the arresting party is not to bring the offender to justice, but to restore the public peace, it would seem to follow that, after the public peace had been restored, the right to arrest without warrant would no longer exist.
In discussing the statutes of the class here under consideration, the Supreme Court of Ohio, in State v. Lewis, said:
*608 Statutes of this class, though enacted in the interests of public order, yet derogate from the liberty of the citizen and, if not strictly construed, which the weight of authority seems to hold they should be, yet are not to be extended by a loose or liberal construction. ... The authority should be limited to the necessity for its exercise. Where an affray is in progress, or an offense in the course of commission, in the presence of an officer, his duty is to prevent its continuance or completion. To accomplish this effectually, the power to at once apprehend the offender is necessary. Under such circumstances, to stay his hand until a warrant could be obtained would paralyze his power to prevent crime and maintain the public peace. So, perhaps, the legality of an arrest without warrant might be maintained where the affray or other misdemeanor had already been completed when the officer appeared, if the offender was present, and public order had not yet been completely restored. Where, however, the offense is an accomplished fact, its prevention is no longer possible, and, if public order has been fully restored before the officer appears, the power to arrest without warrant for a mere breach of the peace or other minor offense is no longer necessary; for the end—to maintain the public peace—for which such authority is given is no longer attainable. Even where such an offense has been committed in the presence of an officer, his power to arrest the offender without warrant should be promptly exercised, or it will be lost.[9]
Almost thirty years later, the Texas Court of Criminal Appeals revisited the Satter-white rule,
The rule of law established by the Satterwhite case, then, appears to be that the right of a private individual to arrest without warrant for a breach of the peace, committed in his presence or view, is limited to the time the offense is committed or while there is continuing danger of its renewal, and does not include the right to pursue and arrest for the purpose of insuring the apprehension or future trial of the offender.
The Satterwhite case was cited with approval in Rodriguez v. State.
In the instant case, appellant’s testimony shows that his purpose in pursuing the deceased was to ‘catch him and hold him until the law could get there and arrest him for jumping on my wife.’ In other words, appellant was pursuing deceased and was attempting to arrest him in order to insure his apprehension and trial for the offense committed upon his wife. Appellant thereby brought himself squarely within the rule stated and the holding in the Satterwhite case. It must be remembered in this connection that the breach of the peace had already occurred and deceased was fleeing from the scene. There was nothing to suggest that the breach of the peace might be renewed or continued or that appellant’s pursuit of deceased was to prevent a renewal of the offense.
From what has been said, the conclusion is expressed that appellant’s pursuit and attempted arrest of the deceased was illegal and unauthorized and that the trial court did not err in refusing the appellant’s requested instructions.[10]
*609 We have distorted the breach-of-the-peace concept so far beyond its intended meaning as to be unrecognizable. The courts appear ready to convert any violation of the law into a breach of the peace. And, because Texas law requires that all criminal charging instruments state that the accused acted “against the peace and dignity of the State,”[11] what possible criminal offense could not be stretched to constitute a breach of the peace? If an accused does not act against the peace and dignity of the State, there is no offense. And if the accused is inside her home, as in this case, what is the likelihood that this “breach of the peace” is a continuing danger? I cannot agree that the legislature intended article 14.03 to be stretched to the point that it essentially negates the federal and state warrant requirements.
I agree with the majority that the Fourth Amendment requires a warrant to legitimize an arrest, and only closely proscribed circumstances permit arrest without prior judicial review.[12] Unlike the majority, I cannot conclude that the facts of this case justify Appellant’s warrantless seizure and interrogation. I, therefore, must respectfully dissent from the scholarly majority’s conclusions to the contrary.

. U.S. Const, amend. IV.

. Tex. Const, art. I, § 9.

. Tex. Code Crim. Proc. Ann. art. 14.03 (West Supp. 2016).

. See Payton v. New York, 445 U.S. 573, 598, 100 S.Ct. 1371, 1386, 63 L.Ed.2d 639 (1980) (noting that in the seventeenth and eighteenth centuries, arrests were typically based on a warrant or made in hot pursuit); Thomas K. Clancy, The Role of Individualized Suspicion in Assessing the Reasonableness of Searches and Seizures, 25 U. of Mem. L. Rev. 483, 491 & n.13 (1995) (noting same and citing Pay-ton).

. State v. Villarreal, 475 S.W.3d 784, 825-26 (Tex. Crim. App. 2015) (op. on reh’g) (selected citations omitted), cert. denied, — U.S. -, 136 S.Ct. 2544, 195 L.Ed.2d 869 (2016).

. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

. See, e.g., Valentich v. State, No. 02-04-00101-CR, 2005 WL 1405801, at *3-4 (Tex. App.-Fort Worth June 16, 2005, no pet.) (mem. op., not designated for publication).

. 112 Tex.Crim. 574, 17 S.W.2d 823 (1929).

. Id. at 826 (citations omitted).

. Woods v. State, 152 Tex.Crim. 338, 213 S.W.2d 685, 688-89 (1948) (citations omitted).

. Tex. Code Crim. Proc. Ann. arts. 21.02, 21.21 (West 2009).

. See Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993); Torres v. State, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) ("A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question and the arrest falls within one of the exceptions set out in Tex. Code Crim. Proc. art. 14.01-14.04.”) (emphasis added).