**Opinion issued January 7, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00957-CR

———————————

**DAVID ANGEL RAMOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12CR0162**

---

## MEMORANDUM OPINION

A jury convicted appellant, David Angel Ramos, of robbery and assessed punishment at 5 years' confinement. In five points of error, appellant contends the trial court erred in (1) overruling two challenges for cause during voir dire, (2)

overruling his objection to the State's voir dire regarding the one witness rule, (3) limiting his cross-examination of a witness regarding bias and untruthful statements, and (5) denying his requested jury instruction regarding citizens' arrests. We affirm.

## BACKGROUND

On a Sunday morning in Galveston, Texas, a beer distributer in a Kroger store noticed appellant leaving the store with a cart full of beer, even though it was too early on Sunday for him to have purchased the beer. The beer distributer alerted a cashier, Christian Vergas, who spotted appellant in the parking lot with the cart full of beer. Vargas notified a nearby security guard, Silverio Gonzales, and pointed to appellant. Surveillance video showed appellant leaving the store without paying for the beer.

Gonzales approached appellant in the parking lot, put his hand on the shopping cart, and told appellant that he needed to stop and turn around. When Gonzales reached for his handcuffs, appellant punched him in the chest with his fist. Gonzales fell backwards, and then began to follow appellant.

Thomas Hearring, the complainant in this case and a co-manager of the Kroger, came out of the side door of the grocery and saw appellant hit Gonzales. There were customers in the parking lot near Gonzales and appellant. Hearring

started in the direction of appellant and Gonzales, but appellant abandoned the grocery cart full of beer and fled in the direction of a nearby convention center.

In an apparent effort to stop appellant, a driver in the parking lot tried to block appellant with his car to keep him from fleeing. Appellant went around the car and kept running out of the parking lot. Hearring continued chasing appellant through the streets of the nearby neighborhood. Also chasing appellant were Gonzales, another Kroger employee named Ryan, and an unidentified citizen.

Eventually Hearring caught appellant and grabbed him by the arm and shoulder. In doing so, Hearring lost his balance and fell. Appellant pinned Hearring down by putting a knee on his chest, pulled out an open knife and put it near Hearring's throat, and said, "If you keep following me, I'm going to use this." Appellant then got up and continued running. Hearring continued to follow him at a distance.

At some point during the chase, both Hearring and Gonzales had called 911 to report the incident. The dispatch log shows that someone was yelling, "I'm going to kill you." No testimony at trial identified who said it.

Galveston Police Officer J. Harris responded to the 911 call reporting a theft at Kroger. When she arrived, she saw a group of people motion in a certain direction. At that point, appellant came around the corner, and Harris told appellant to show her his hands. Appellant said, "I didn't pull no knife until that

3

boy jumped all over me." Harris arrested appellant, conducted a pat-down search, and found a knife in appellant's pocket. While being transported to the jail, appellant said, "Damn that video. Fuck. Oh, Lord help me."

Appellant was charged with aggravated robbery. The jury found him guilty of the lesser-included offense of robbery, and assessed punishment at five years' confinement. This appeal followed.

## VOIR DIRE ISSUES

### I. Challenges for Cause

In his first two points of error, appellant contends that the trial court erred in denying his challenges for cause to two jurors.

### A. *Standard of Review and Applicable Law*

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (Vernon 2006). A party may challenge a prospective juror for cause if the prospective juror demonstrates a bias or prejudice against any of the law applicable to the case on which the defense is entitled to rely. *Id.* art. 35.16(c)(2).

"The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law." *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Before a

4

prospective juror can be excused for cause on this basis, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views. *Jones v. State*, 982 S.W.2d 386, 390 (Tex. Crim. App. 1998). The proponent of a challenge for cause has the burden to show that the challenge is proper. *Feldman*, 71 S.W.3d at 747. The proponent does not meet that burden until the record shows that the prospective juror understood the requirement of the law and could not overcome his prejudice well enough to follow it. *Id.*

### B. Prospective Juror #2

During voir dire, the following exchange took place:

[Defense Counsel]: If you have a single doubt, no matter how small that doubt is, the law requires you to find a defendant not guilty. That means you could think somebody did it, you could be pretty sure that somebody did it. You could say, "Well, that's most likely what happened." And then all that means is not guilty. If you as a juror have a doubt on one element, no matter how small that is reasonable, you're require to find somebody not guilty.

[Prospective Juror #2]: Yeah, I would probably agree with No. 5 down there. I think if it's beyond a reasonable doubt—or, excuse me, if there's reasonable doubt, I would say not guilty. If there was some small technicality, I would struggle with saying not guilty if it was a small technicality.

[Defense Counsel]: You would say not guilty?

[Prospective Juror #2]: Yes.

[Defense Counsel]: Could you follow the law as it was written or do you think that's going to be close enough because of a technicality.

[Prospective Juror #2]: Ask the question again. I'm sorry.

[Defense Counsel]: If it is quote, a technicality—and I don't like that word. I only have an hour to so don't want to get on a soapbox and talk about technicalities—if there was something that was there that you thought was minor, you would be able to overlook it and still find him guilty? That's how I understand what you're saying, and correct me if I'm wrong.

[Prospective Juror #2]: Yes, I think that's what I'm saying. Yes.

[Defense Counsel]: Okay. Thank you, sir.

After the general voir dire, the trial court had the prospective juror approach the bench for further questioning. During such questioning, the following exchange took place:

[Defense Counsel]: [Prospective Juror #2], I believe in our earlier questioning—and correct me if I am wrong—in taking notes as I go, you had indicated that you had a problem with the burden of proof that was on the State if there was—most of the case was proven but there was a small— I believe the words the jurors use, a technicality.

[Prospective Juror #2]: Yes.

[Defense Counsel]: Close was good enough. And you would be able to overlook that small discrepancy.

[Prospective Juror #2]: Yes, I didn't say "close was good enough." What I meant was I think like—I think one of the other jurors used a good example of, you know, the date was supposed to be the 30th or someone said the 31st or something. You know—it's a technicality. It doesn't really affect— even though it's one of the bullets. I think that this is what he had on the slide.

[Defense Counsel]: So if there was some dispute over one of the elements but the other six were proven beyond a reasonable doubt but close on the seventh, that's good enough?

[Prospective Juror #2]: It's a theoretical question; but it depends on the close enough, right?

[Defense Counsel]: But I am fairly accurate, depending on the situation?

[Prospective Juror #2]: Yes.

6

[Defense Counsel]: Nothing further.

[Prosecutor]: May I ask a question.

[Trial Court]: Yes.

[Prosecutor]: "Technicality" has such a negative connotation. You saw the bullet points I pull all the elements of the offense that I have to prove beyond a reasonable doubt.

[Prospective Juror #2]: Right.

[Prosecutor]: Okay. Would you hold me to that about burden that I have to prove to you that each and every one of those elements were met beyond a reasonable doubt with regards to evidence? Would you hold me to that burden?

[Prospective Juror #2]: Yes.

[Prosecutor]: You would?

[Prospective Juror #2]: Yes.

[Trial Court]: Okay. And if he didn't prove one of those elements of the offense and you have a reasonable doubt as to his having proved that?

[Prospective Juror #2]: Yeah, if I have a reasonable doubt, I would have to say not guilty.

[Trial Court]: Not guilty?

[Prospective Juror #2]: Right.

[Trial Court]: All right. Do you have any other questions.

[Defense Counsel]: I guess I am confused. My scenario was that he proves six of them beyond a reasonable doubt but didn't quite make it on the seventh; and it's my understanding was your answer was, "Well, if it's pretty close on that seventh one, we are going to overlook that."

[Prospective Juror #2]: Yeah. Again, I go back to what I said, which was like the date thing, for instance, which I think is one of the seven, which I

don't think it would be; but if that was the type of thing, I would have trouble with saying that's a reasonable doubt.

[Defense Counsel]:  Okay.  Galveston County or—

[Prospective Juror]:  Yeah, but not the other ones, which I think is the meat of them, you know, the six, whatever they are below the County, which is the meat of what I think is the important issues.

[Defense Counsel]: Nothing further.

[Trial Court]: Do you have anything further?

[Prosecutor]:  Just—I know you are talking about, you know, you are saying the meat, the ones you say you think are important; but as the Court has told you and I told you, we are to meet the elements.  Our burden is to prove each and every one of them beyond a reasonable doubt.  If I don't meet my burden on one of those elements, you will be instructed to return a not guilty verdict.  Can you follow that law?

[Prospective Juror #2]:  Yes.

[Prosecutor]:  And that's the real issue.

[Prosecutor]:  Yes, I can.

[Trial Court]:  You have—the State has a burden—

[Prospective Juror #2]: Yeah, I understand absolutely.

[Trial Court]:  And he either proves up an element, or he doesn't.

[Prospective Juror #2]:  Right. I completely agree with that completely.

[Trial Court]:  If he doesn't prove up that element, are you telling me that your verdict would be not guilty?

[Prospective Juror #2]:  Not guilty if he didn't prove the element.

[Trial Court]:  Because that's what your duty requires you to do.

[Prospective Juror #2]: That's correct.

8

When, as here, the record demonstrates a vacillating or equivocal prospective juror, we accord great deference to the trial judge who had the better opportunity to see and hear the person. *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). The trial court is able to consider important factors such as demeanor and tone of voice that do not come through when reviewing a cold record. *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *see Bell v. State*, 233 S.W.3d 583, 591 (Tex. App.—Waco 2007, pet. dism'd). We hold that the record supports the trial court's finding with respect to whether prospective juror #2 is able to follow the law as instructed.

We overrule appellant's first point of error.

### C. Prospective Juror # 14

During voir dire, Defense Counsel stated:

> The law that I think this jury is going to be instructed with is that a person has the right to resist an unlawful arrest; and if the arrest is unlawful by a citizen, they have the right to resist. And the court puts limitations on what a citizen can do to arrest someone. It's the job of the police to track somebody down and hold them for trial, not Joe Citizen. Are you ok with that?

After Prospective Juror #14 expressed some dissatisfaction with that principle of law, he was called to the bench for further questioning, during which the following exchange occurred:

> [Defense Counsel]: [Prospective Juror #14], when we were discussing earlier—and I was trying to make sure my notes were correct—the limitations on the right of a citizen to make an arrest, that limitation

9

being once the property has been disposed of or recovered, a citizen does not have the right to pursue the wrongdoer for the sole purpose of making sure they stand trial. And my notes reflect that you disagreed with that. Did I get that correct?

[Prospective Juror #14]: That is correct.

[Defense Counsel]: And if you were instructed that a citizen does did not have a right to pursue that person and that it was, therefore, an unlawful arrest, could you follow that law?

[Prospective Juror #14]: It would go against my opinion; but if I had to follow it, I would follow it.

[Defense Counsel]: Okay. If you were back in the jury room, would your disagreement with the law play some role ever so slightly, even if you didn't want to, in your decision to find someone guilty or not?

[Prospective Juror #14]: I mean, if I disagree with the law, that's my opinion.

[Defense Counsel]: Right. But would it affect your decision?

[Prospective Juror #14]: It would affect my decision.

[Defense Counsel]: It would?

[Prospective Juror #14]: Yes.

[Defense Counsel]: Thank you very much.

[Prosecutor]: Yes, sir, briefly. I just want to understand where you are. You stated even though that's the law, you disagree with it, but you could follow the law. But now you are stating it would affect your decision making? Can you explain to the Court what you mean?

[Prospective Juror #14]: Well, because he rephrased the second part, the question, would it at all influence my decision, of course if I disagree with the law, it would influence. It's going to influence my decision.

10

[Prosecutor]: It will influence your decision, but in the end would you ultimately be able to follow the law that the Judge is going to give you in your jury charge?

[Prospective Juror #14]: I will follow whatever the Judge gives me.

[Trial Court]: Okay. What I understand you are saying, although you may not agree with the law—

[Prospective Juror #14]: Correct.

[Trial Court]: —for whatever reasons that you have, but that you would follow the law?

[Prospective Juror #14]: I would follow your instructions.

[Trial Court]: And that would mean following the law if that was the law.

[Prospective Juror #14]: That's correct.

[Trial Court]: And that is the law that I give you.

[Prospective Juror #14]: That's correct.

Even though prospective juror #14 vacillated in describing his position on his ability to follow a law he disagreed with, we must defer to the trial court's ruling and hold that it did not abuse its discretion in denying appellant's challenge for cause to prospective juror #14. *See Swearingen*, 101 S.W.3d at 99. Further, a prospective juror need not agree with the law as long as his personal views do not substantially impair his ability to abide by his oath and answer the jury issues

11

according to the evidence and the law. *Rayford v. State*, 125 S.W.3d 521, 532 (Tex. Crim. App. 2003).

We overrule appellant's second point of error.

## II. Commitment Question on One Witness Rule

In his third point of error, appellant contends that the trial court allowed the State to ask an improper commitment question during voir dire when it sought to discover which veniremembers could not convict appellant if the State produced only one witness and the juror believed that witness beyond a reasonable doubt.

### A. *Standard  of Review and Applicable Law*

The trial court has broad discretion over the process of selecting a jury. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Braxton v. State*, 226 S.W.3d 602, 604 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd). We therefore review the trial court's ruling on an allegedly improper commitment question during voir dire for an abuse of discretion. *Atkins v. State*, 951 S.W.2d 787, 790 (Tex. Crim. App. 1997); *Braxton*, 226 S.W.3d at 604.

Improper commitment questions are prohibited to "ensure that the jury will listen to the evidence with an open mind—a mind that is impartial and without bias or prejudice—and render a verdict based upon that evidence." *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

12

Commitment questions "require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context." *Id.*; *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (holding that commitment questions "are those that commit a prospective juror to resolve, or refrain from resolving, an issue a certain way after learning a particular fact"). Not all commitment questions, however, are improper. *Standefer*, 59 S.W.3d at 181.

The Court of Criminal Appeals has articulated a three-part test for determining whether a voir dire question is an improper commitment question. *Id.* at 179–84; *Braxton*, 226 S.W.3d at 604; *Harris v. State*, 122 S.W.3d 871, 879 (Tex. App.—Fort Worth 2003, pet. ref'd). First, the trial court must determine whether the particular question is a commitment question. *Standefer*, 59 S.W.3d at 179. A question is a commitment question if "one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question." *Id.* at 180. Second, if the question is a commitment question, the trial court must then determine whether it is a proper commitment question. *Id.* at 181 ("When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard."); *Braxton*, 226 S.W.3d at

13

604. A commitment question is proper if one of the possible answers to the question gives rise to a valid challenge for cause. *Standefer*, 59 S.W.3d at 182; *Braxton*, 226 S.W.3d at 604. If the question does not, then it is not a proper commitment question and it should not be allowed by the trial court. *Standefer*, 59 S.W.3d at 182. Third, if the question does give rise to a valid challenge for cause, then the court must determine whether the question "contain[s] *only* those facts necessary to test whether a prospective juror is challengeable for cause." *Id.* (emphasis in original). "Additional facts supplied beyond what is necessary to sustain a challenge for cause render improper what otherwise would have been a proper question." *Braxton*, 226 S.W.3d at 604. Here, we are concerned with the second prong of the *Standefer* test—whether the State's questions would give rise to a valid challenge for cause.

### B. Analysis

A juror cannot be validly challenged for cause simply because he would need more than one witness to convict. *Lee v. State*, 206 S.W.3d 620, 623 (Tex. Crim. App. 2006); *Castillo v. State*, 913 S.W.2d 529, 534 (Tex. Crim. App. 1995). However, a juror who could not convict based on one witness, *whom they believed beyond a reasonable doubt*, and whose testimony proved every element of the indictment beyond a reasonable doubt, can be validly challenged for cause. *Lee*, 206 S.W.3d at 623.

14

[Prosecutor]: *The law requires me to prove my case beyond a reasonable doubt. The law does not require me to bring a certain number of witnesses to testify that a crime occurred*. A perfect example would be, you know, if there's some mugging in a dark alley—or, for instance, yourself. Were you the only witness to the crime other than the defendant.

[Prospective Juror]: I was the only one.

[Prosecutor]: You were the only one.

[Prospective Juror]: (Nods affirmatively.)

[Prosecutor]: How would you feel if you called the police and they came out and they said, "Sir, who else saw it," and you said and they said, "Not enough witnesses, talk to you later," how would you feel about that?

[Prospective Juror]: I would feel very aggravated about that.

[Prosecutor]: Well, fortunately, that's not the way that it works, because if you have one witness that can testify to each and every element of the offense, you can find them guilty.

[Defense Counsel]: Judge, that's a misstatement of the law. The requirement is that the person be believed beyond a reasonable doubt on each of those elements, not just they say something about those elements. That is lowering the standard of proof.

[Prosecutor]: I'll restate it, You Honor.

[Trial Court]: Okay. If you would.

[Defense Counsel]: And each individual juror has to be able to find that a single witness could convince them beyond a reasonable doubt. They are free to say, "I need two witnesses to be proven beyond a reasonable doubt." That is their right. But if they believe beyond a reasonable doubt with just one witness, that's sufficient as well. But the jurors' right is I need two witnesses.

15

[Prosecutor]: And that's why I'm asking this question. I'm trying to find out who's going to require me—

[Trial Court]: If you would, Counsel, just rephrase your question.

[Prosecutor]: Okay.

[Trial Court]: And the Court will give you the law regarding those issues.

[Prosecutor]: What it's stating is that—the law is if one witness—and I'm just going to use this hypothetically. ***I'm going to use this because we have all the elements here. If one witness comes to the courtroom and testifies to each and every one of these elements and you as a juror believe beyond a reasonable doubt that each one of those elements were fulfilled, you can return a guilty verdict***. That's what the law states, one witness is sufficient. However, some people would like to have two witnesses or three witnesses or four witnesses. I understand that people would like that. The more witnesses the better. I understand that. Sometimes we don't have it. What I want to know is who is going to require—not who would like to have multiple witnesses—but who's going to require me to present more than one witness to testify to each and every one of these elements?

[Defense Counsel]: Objection. Improper question, Judge. They have the right to require two or more witnesses. That's an improper question.

[Prosecutor]: They do not have—Your Honor, they don't have that right.

[Trial Court]: I think that the jury can request and say that they would like more—

[Prosecutor]: Sure.

[Trial Court]:—and that's the issue, I think, that's being made at this point in time. So if you would, just rephrase your question Counsel.

16

[Defense Counsel]: For the record, Judge—and I'm certainly not quarreling—

[Trial Court]: Sure.

[Defense Counsel]: For the record, the law requires each juror be convinced beyond a reasonable doubt. If a particular juror requires two witnesses, that's the burden the State has with that juror. If a different juror requires only one witness, that's the burden with that juror. So to say if one person comes in and testifies who's going to require more, that's not the law and I object to that question.

[Trial Court]: Okay. Your objection is overruled Counsel.

[Defense Counsel]: Thank you, Your Honor.

[Prosecutor]: So the question is who here is going to require the State to bring more than one witness to testify to each and every one of those elements and *prove them beyond a reasonable doubt*?

[Defense Counsel]: May I have a running objection, Judge?

[Trial Court]: Yes, sir, you may.

[Prosecutor]: Would anyone require me to have more than one person testify that each and every one of those elements occurred *and you believe them beyond a reasonable doubt*? If you are, please let me know.

In the highlighted portions of the discussion above, the prosecutor made clear to the panel that it could rely on the testimony of a single witness to convict only if it believed the witness beyond a reasonable doubt as to each element. Although the prosecutor did not mention that the juror must believe the hypothetical single witness beyond a reasonable doubt each and every time he discussed the issue, it is clear that, when reviewing the discussion before the venire

17

as a whole, it was made clear to the jury that the testimony of only one person is sufficient only if the juror believes that witnesses beyond a reasonable doubt as to each element. *See Lee*, 206 S.W.3d at 624 (holding that we do not view individual questions in isolation, but review entire venire discussion to determine whether jury was adequately instructed on sole witness rule). As such, the trial court did not err in concluding that the State's commitment question was proper because it sought to determine if there were jurors who would hold the State to a higher burden of proof by requiring more than one witness, even though the juror believed the testimony of the sole witness proved each element beyond a reasonable doubt. *See Castillo*, 913 S.W.2d at 534.

We overrule point of error three.

## LIMITATION OF CROSS EXAMINATION

In his fourth point of error, appellant contends that the trial court abused its discretion when it refused to allow defense counsel to cross-examine Gonzales about whether he was mad at appellant when he chased after him, which would have revealed his bias against appellant.

### I. Standard of Review and Applicable Law

We review a trial court's decision to exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside

the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

The Sixth Amendment right to confront witnesses "includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). Generally, the Texas Rules of Evidence permit a defendant to "cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition." *Id.* at 563; *see also* TEX. R. EVID. 613(b) (providing for impeachment of witness by evidence of alleged bias or interest in favor or against party); *Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009) ("The possible animus, motive, or ill will of a prosecution witness who testified against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him."); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) ("Exposing a witness' motivation to

testify for or against the accused or the State is a proper and important purpose of cross-examination."). The scope of permissible cross-examination is "necessarily broad." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify." *Id.*

This broad scope of cross-examination does not mean, however, "that a defendant can explore every possible line of inquiry." *Smith v. State*, 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or *only marginally relevant.*" *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986) (emphasis added); *see also Hammer*, 296 S.W.3d at 561 ("This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination.").

## II. Analysis

During cross-examination, the following exchange took place between Defense Counsel and Gonzales:

[Defense Counsel]: Would it be fair to say that you have animosity towards Mr. Ramos?

[Gonzales]: Rephrase that question.

20

[Defense Counsel]: Would it be fair to say that you have animosity towards Mr. Ramos?

[Gonzales]: Can you explain what "animosity" is?

[Defense Counsel]: Yes. Anger towards him.

[Gonzales]: No, sir.

[Defense Counsel]: So it's okay for him to come up and punch you and you don't have any anger about that?

[Gonzales]: If he come up to me and punches me, yes; but I don't hold grudges. It's an everyday thing.

Earlier in Gonzales's testimony, Defense Counsel had been prohibited from extensive questioning about whether Gonzales had violated Kroger policy in chasing appellant, and was given permission to make a bill of exception.[1] During the bill of exception, Defense Counsel revisited the issue of whether Gonzales was mad when he chased appellant.

[Defense Counsel]: But you chased [appellant] anyway?

[Gonzales]: Yes.

[Defense Counsel]: In violation of your policies?

[Gonzales]: Un-huh.

---

[1] The trial court had initially allowed questions about whether Gonzales had violated Kroger policy by chasing appellant, and Gonzales had admitted before the jury that he had, in fact, violated Kroger policy by doing so. However, when Defense Counsel attempted to pursue the issue further, the trial court did not allow further questioning, and Defense Counsel requested and was given permission to make a bill of exception.

[Defense Counsel]: And evidently in violation of Kroger's policies, correct?

[Gonzales]: Uh-huh. Yes.

[Defense Counsel]: And you did that because you were mad at him?

[Gonzales]: Yes.

[Defense Counsel]: So when you testified to this jury earlier that you weren't mad at him, were you lying then?

[Gonzales]: I wasn't mad at him punching me. It was the fact that after I told him to stop he took off running.

[Defense Counsel]: Okay. It was the fact that he didn't listen to you that made you mad?

[Gonzales]: Uh-huh.

[Defense Counsel]: You're okay with him punching you but not okay with him not listening to you?

[Gonzales]: I'm not okay with him punching me. I'm never okay— I'm never okay with nobody punching me or somebody else.

[Defense Counsel]: Okay. And that made you mad?

[Gonzales]: Uh-huh?

[Defense Counsel]: Yes?

[Trial Court]: You have to answer "yes" or "no," not "uh-huh or "huh-uh."

[Gonzales]: No.

[Defense Counsel]: No, you weren't mad?

22

[Gonzales]:  I wasn't mad.

[Defense Counsel]: But you just testified to this judge just 20, 30 seconds ago that you were mad at him.

[Prosecutor]:  I object.  I think he asked him—I could be wrong— are you mad at him, you're mad at him today, not were you mad at him at the time of the incident.  I think there's a very big distinction there.

[Trial Court]:  This is your record, Counsel.  Just rephrase your question.

[Gonzales]:  That day when he punched me I wasn't—no, I wasn't mad.

[Defense Counsel]: Okay. So, your testimony just a few minutes ago was a lie to this judge?

[Gonzales]: How can I say—

[Defense Counsel]:  It's a "yes" or "no" question.

[Gonzales]: No.

[Defense Counsel]: So you can be mad at him and not mad at the same time and neither one is a lie, right?

[Gonzales]: Yes.

[Defense Counsel]: Okay. But you violated your policy for whatever reason even though you weren't mad at him, correct.

[Gonzales]: Yes.

At the conclusion of the bill of exception, Defense Counsel asked if he could "recall [Gonzales] because he testified to this jury that he wasn't angry at Mr. Ramos and then he just testified that he was angry and that's why he chased after

23

him; and then he changed his story again when he realized he contradicted himself."

Here, the trial court could have determined that it was not necessary to recall Gonzales because his initial testimony that he was mad when hit, but "did not hold a grudge," was not inconsistent with his testimony during the bill of exception that he chased after appellant because he was mad at him.

Also, when the possible bias and prejudice of the State's witness has been made patently obvious to the factfinder, and the defendant has otherwise been afforded an opportunity for a thorough and effective cross-examination, no violation of the defendant's confrontation rights occurs. *Carmona v. State*, 698 S.W.2d 100, 104 (Tex. Crim. App. 1985). During his testimony before the jury, Gonzales testified that he held no animosity or grudge toward appellant, even though he was mad when appellant hit him. His testimony during the bill of exceptions added little to that which was already before the jury—again, appellant said that "he was not alright" with appellant hitting him, but he was not mad. As such, any bias or animosity that Gonzales felt toward appellant was already before the jury, thus the trial court did not err by not allowing appellant to recall Gonzales to the stand to cover the issue again.

## III. Harmless Error

Nevertheless, we would also find that error, if any, is harmless. To conduct such an analysis, we must, after assuming that the damaging potential of the cross-examination was fully realized, determine whether the error of denying the cross-examination was harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438. Whether such an error is harmless depends upon the following factors: 1) the importance of the witness's testimony in the prosecution's case; 2) whether the testimony was cumulative; 3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; 4) the extent of cross-examination otherwise permitted; and, 5) the overall strength of the prosecution's case. *Id.*; *Shelby v. State*, 819 S.W.2d at 547.

Here, Gonzales's testimony was important, but he was not the complaining witness and his testimony was largely the same as that of the complaining witness, Hearring. The evidence about Kroger's policies was already before the jury and Gonzales had admitted that he violated the policy by chasing appellant. That Gonzales was mad at appellant was also explained to the jury when Gonzales said that he was not okay with being hit by appellant, but did not hold a grudge. And, in a crime against a stranger such as this, whether Gonzales was mad at appellant had little relevance. Appellant was allowed to cross-examine and recross Gonzales at length; he was just not allowed to recall him after the conclusion of the bill of

exceptions. The State's case was strong—there was a surveillance video and testimony from the complaining witness, Hearring. After weighing these factors, we conclude that error, if any, in not allowing appellant to recall and further cross-examine Gonzales was harmless.

Accordingly, we overrule point of error four.

## JURY INSTRUCTION ON CITIZENS' ARRESTS

In his fifth point of error, appellant contents the trial court "erred in denying appellant's requested instruction regarding the limitations upon a citizen's right to pursue and apprehend a defendant. This failure to properly instruct the jury denied Appellant the defensive theory of the right to resist an illegal arrest."

## I. Background

During the charge conference, appellant requested, and the trial court denied, the following jury instructions:

> It is unlawful for any person to arrest or attempt to arrest an individual without a warrant unless there is a specific exception to the warrant requirement.

> A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

> Any person has a right to prevent the consequences of theft by seizing any personal property that has been stolen and bringing it, with the person suspected of committing the theft, if that person can be taken, before a magistrate for examination, or delivering the property and the person suspected of committing the theft to a peace officer for that

26

purpose. To justify a seizure under this article, there must be probable cause to believe the property is stolen, and the seizure must be openly made and the proceedings had without delay.

The right of a[] private individual to arrest without a warrant for a breach of the peace, committed in his presence or view, is limited to the time the offense is committed or while there is a continuing danger of its renewal, and does not include the right to pursue and arrest for the purpose of ensuring the apprehension or future trial of the offender.

A person other than a peace officer is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making a lawful arrest, or to prevent or assist in preventing escape after lawful arrest if, before using force, the actor manifests his purpose to and the reason for the arrest or reasonably believes his purpose and the reason are already known by or cannot reasonably be made known to the person to be arrested.

A person other than a peace officer acting in a peace officer's presence and at his direction is justified in using deadly force against another when and to the degree the person reasonably believes the deadly force is immediately necessary to make a lawful arrest, or to prevent escape after a lawful arrest, if the use of force would have been justified as previously stated and the actor reasonably believed the offense against the public peace for which an arrest is authorized included the use or attempted use of deadly force or the actor reasonably believes there is a substantial risk that the person to be arrested will cause death or serious bodily injury to another if the arrest is delayed.

An individual does have the right to resist an unlawful arrest by a person who is not a peace officer.

## II. Standard of Review

We review the trial court's denial of a requested jury instruction for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

27

Defendants are entitled to an instruction on every requested defensive issue raised by the evidence, whether the evidence is weak or strong, unimpeached or uncontradicted, and regardless of the credibility of the defense. *See Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). When determining whether an instruction on a defensive issue was warranted, we view the evidence in the light most favorable to the defendant. *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

## III. Analysis

Appellant acknowledges that articles 14.01[2] and 18.16[3] of the Code of Criminal Procedure authorize citizens to make arrests in certain circumstances, but contends that there are limitations on that right, which were exceeded in this case.

---

[2] Article 14.01(a) provides:

A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

TEX. CODE CRIM. PROC. art. 14.01(a).

[3] Article 18.16 provides:

Any person has a right to prevent the consequences of theft by seizing any personal property that has been stolen and bringing it, with the person suspected of committing the theft, if that person can be taken, before a magistrate for examination, or delivering the property and the person suspected of committing the theft to a peace officer for that purpose. To justify a seizure under this article, there must be reasonable ground to believe the property is stolen, and the seizure must be openly made and the proceedings had without delay.

TEX. CODE CRIM. PROC. ANN. art. 18.16 (Vernon 2005).

Essentially, appellant argues that he was illegally arrested by the citizens pursuing him in this case, and he was entitled to instruct the jury of his right to defend himself against an illegal arrest. Thus, we must consider whether there was any evidence raising the issue of an illegal arrest.

### A. Citizen's Arrest under Article 14.01

Appellant contends that article 14.01 would not authorize a valid citizen's arrest because appellant had abandoned the property and was fleeing the scene. In so arguing, appellant relies on a line of cases beginning with *Satterwhite v. State*, 17 S.W.2d 823, 826 (Tex. Crim. App. 1929), for the proposition that a citizen cannot make an arrest for someone committing a breach of the peace within their presence once the offense has been committed. As stated in *Satterwhite*,

> If the purpose of permitting an arrest without warrant of one who is committing a breach of the peace in the presence of the arresting party is not to bring the offender to justice, but to restore the public peace, it would seem to follow that, after the public peace had been restored, the right to arrest without warrant would no longer exist.

*Id.* at 580. Following *Satterwhite*, the court in *Woods v. State*, 213 S.W.2d 685, 688 (Tex. Crim. App. 1948) held that "the right of a private individual to arrest without a warrant for a breach of the peace, committed in his presence or view, is limited to the time the offense is committed or while there is a continuing danger of its renewal, and does not include the right to pursue and arrest for the purpose of insuring the apprehension or future trial of the offender." Thus, in *Woods*, the

29

defendant was not permitted to pursue and arrest a man who had assaulted his wife because the assault was complete, the man was fleeing, and there was nothing to suggest that the assault would be renewed. *Id.* at 688. Similarly, in *Satterwhite*, a justice of the peace who had been involved in a fight with a citizen, approached the citizen at a different location five minutes later, and killed him. 17 S.W.2d at 825–26. The court held that the citizen's arrest was illegal because it was not made at the time the offense was committed or while there was a continuing danger of its renewal. *Id.* at 827.

The State argues that *Satterwhite* and *Woods* are distinguishable because, in those cases, the offenses giving rise to the citizen's arrest—assaults—were completed before the citizen's arrest occurred, while here, the robbery was ongoing during the period in which appellant was fleeing the scene. We agree with the State.

Appellant was charged with aggravated robbery. The elements of aggravated robbery are (1) a person; (2) in the course of committing theft; (3) with intent to obtain or maintain control of property; (4) intentionally or knowingly; (5) threatens another with, or places another in fear of; (6) imminent bodily injury or death; and (7) uses or exhibits; (8) a deadly weapon. TEX. PENAL CODE ANN. § 29.02–.03 (Vernon 2011). "In the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or *in immediate flight after the*

30

*attempt or commission of theft.*" TEX. PENAL CODE ANN. § 29.01(1) (Vernon 2011) (emphasis added); *Oggletree v. State,* 851 S.W.2d 367, 368–69 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding evidence sufficient to support robbery conviction when appellant's attempted theft failed and he later returned to scene and brandished knife).

Here, the offense for which appellant was arrested included, by statutory definition, all events occurring "in immediate flight after the attempt or commission of theft." As such, the offense was not yet complete at the time of the citizen's arrest because appellant was still in the immediate flight after his attempted theft. As such, the undisputed facts do not raise an issue of whether appellant was illegally arrested under article 14.01.

### B. Citizen's Arrest under Article 18.16

Appellant also argues that "the State cannot rely upon Tex. Code Crim. Proc. § 18.16 to justify the pursuit of Appellant for the sole purpose of ensuring that Appellant stood trial." Appellant's position is the same as in the previous section—because he had abandoned the stolen goods, the citizens no longer had any right to pursue and arrest him.

We disagree. In *Simpson v. State*, a store security guard in a grocery store saw the defendant pick up a piece of meat and stuff it in her girdle. 815 S.W.2d 900, 901 (Tex. App.—Fort Worth 1991, no pet.) When the security guard identified himself, the defendant started running and fighting. *Id.* Another store employee grabbed the defendant's arm, and during the struggle the meat fell out of her girdle onto the floor. *Id.*

31

The defendant then just sat down in the doorway, kicking and screaming. *Id.* The security guard then subdued her until police arrived. *Id.* On appeal, citing *Satterwhite*, the defendant contended that the security guard had no right to detain her once she relinquished the meat. *Id.* at 902. The court of appeal distinguished *Satterwhite*, holding that, because the charged case involved a theft, the security guard had the authority to arrest the defendant pursuant to article 18.16. Similarly, in *Knight v. State*, No. 14-10-00408, 2011 WL 3760827 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd), the court of appeals held that a security guard had the authority to detain a suspected shoplifter pursuant to article 18.16, even though the shoplifter had abandoned the shopping cart full of merchandise. *Id.* at *3.

Thus, like the courts in *Simpson* and *Knight*, we conclude that there is no fact issue regarding whether appellant was illegally arrested under article 18.16 simply because he abandoned the stolen beer.

There being no fact issue regarding the legality of the citizen's arrest under either article 14.01 or article 18.16, the trial court did not err by refusing to include appellant's requested instructions in the charge. Accordingly, we overrule point of error five.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).